434   WESTERN MD. R. R. CO. vs. KEHOE.

Syllabus.                                    [83

# WESTERN MARYLAND RAILROAD COMPANY
## vs. LAWRENCE FRANK KEHOE.

*Negligence—Accidents at Railway Crossings—Injury to Person Wrongfully on Track—Instructions.*

A railway company is not bound to anticipate that a person will be negligently or wrongfully on its tracks, but if its servants see a person in a place of peril on the right of way, then the duty arises to avoid injuring him if possible.   But to recover for an injury sustained when in such a position, the plaintiff must show : (1) that the company's servants had knowledge of his peril; (2) that they had that knowledge in time to avoid an injury; (3) that they then failed to exert proper care to avoid the injury.

All railway companies are bound, upon approaching a road crossing, to use due care to avoid injury to others lawfully traversing the highway, and to the extent that they fail to use that care they are responsible for injuries resulting therefrom.   But this duty is only co-extensive with the correlative right of the individual to use the highway for the purposes of transit, and imposes no obligation on the company's servants to be on the look out for the persons negligently lying on the track outside of the limits of the highway.

Plaintiff was thrown from a buggy in which he was driving across the tracks of the defendant at a country road crossing at night, and certain cars which were being shifted down a siding in charge of a brakeman, who was standing between the first and second cars, ran over plaintiff's leg while he was lying between the main track and the siding, at a point from six to twelve feet distant from road crossing. Plaintiff's evidence was that upon coming to the track he looked and listened, and seeing no cars attempted to cross and then his buggy was struck.   Defendant's evidence was that the plaintiff, who had been drinking, drove in a gallop towards the railroad crossing, and when within a few feet of the track ran into a post, tore off the left rear wheel of his buggy and dashed across the track on three wheels, without coming in contact with a car.   The brakeman who was in charge of the cars being shifted by their own momentum down grade and which ran over plaintiff saw no one on the track and heard no cry.   *Held,*

1st. That since there was no evidence that the plaintiff was seen lying on the track by any employee of defendant, and since defendant was not bound to keep a look out for persons in the place where plaintiff was injured, it was error to instruct the jury, by a prayer assum-

ing that plaintiff's position on the tracks was due to his own negligence that if the defendant could have avoided the injury by ordinary care after they saw, or might have seen the plaintiff lying on the track, then the plaintiff is entitled to recover.

2nd. That since there was no obligation on the part of the defendant to assume that a person might be at the place where plaintiff was injured, the failure of defendant's servants to see him there was no breach of duty owed to him and therefore was not negligence.

3rd. That if plaintiff's position on the track where he was run over was the result, not of his own negligence, but of the carelessness of the defendant in striking the buggy with a car crossing the highway without notice of its approach, then the plaintiff is entitled to recover.

In the above case it was the duty of the plaintiff before attemping to drive across the tracks to look and listen and stop or reduce his speed, and if plaintiff failed to do this, but drove rapidly across and his vehicle was struck by defendant's car he is not entitled to recover, although the cars were being moved without the showing of any light or the ringing of any bell.

A prayer comprising two different propositions, either one of which is a good cause of action, is erroneous when the two propositions are conflicting.

Appeal from the Circuit Court for Baltimore County. At the trial the plaintiff offered the following prayers :

1. If the jury find that the plaintiff on the night of the accident was proceeding to his home along the country road driving his horse and buggy, and that before attempting to cross the defendant's railroad he slowed up his horse to look and listen for trains on the railroad, and that he neither saw nor heard any cars or locomotive near the crossing or in motion, and that while attempting to cross the first or main track of defendant's road his buggy was struck by a car which had been detached from the engine and was running down that track by its own momentum, and upon which no light was visible to plaintiff, and that he was thereby thrown from his seat upon and between the rails of defendant's switch or second track, a few feet from the travelled way, where he lay stunned and unconscious, and was immediately thereafter run over and his leg crushed by cars of the defendant, which had been likewise detached and started into the switch at the same time the other car was

436     WESTERN MD. R. R. CO. vs. KEHOE.

Statement of the Case.                    [83

running down the main track; and if the jury shall be of opinion, from all the circumstances, that the injury was caused by a want of ordinary and proper care on the part of defendant, its agents and servants, and without any fault of the plaintiff contributing thereto, then the plaintiff is entitled to recover.   (Refused).

2nd. If the jury shall find that the plaintiff, on the night in question, while proceeding to his home and driving his horse and buggy, before attempting to cross defendant's railroad, slowed up his horse to look and listen for trains on the railroad, and neither saw nor heard cars or locomotive near the crossing or in motion, and that seeing no danger, he started forward, and as the horse was on the point of reaching the first or main track, a car of defendant's slid down the track which had been detached from the engine, and which up to that moment had not been seen, and running by its own momentum, and that at the same time the horse swerved and dashed against a signal post standing in the edge of the road a few feet from the track, and that the plaintiff was thereby thrown from his seat, and fell upon and between the rails of defendant's second track, a few feet from the travelled way, where he lay stunned and unconscious, and was immediately thereafter run over and crushed by defendant's cars, which had likewise been detached from the engine and allowed to drift down the switch by their own momentum; and if the jury shall be of opinion, from all the circumstances, that the injury resulted from a want of ordinary and proper care on the part of the defendant, its agents and servants, and without any fault of the plaintiff contributing thereto, then the plaintiff is entitled to recover.   (Refused).

3rd. If the jury find that upon the night of the accident a burden train of defendant's left Baltimore about 7.18 P. M., and reached Howardville about 10 P. M., where the railroad crosses a county road at grade; and that the bulk of the train was left on the main track some distance east of the crossing, and the engine proceeded beyond the crossing

WESTERN MD. R. R. CO. vs. KEHOE.     437

Md.]                    Statement of the Case.

to a switch, which it ran back upon and coupled to a num-
ber of cars standing on said switch, which it proceeded to
haul westwardly beyond the switch, and from that point pro-
ceeded to throw the rear car on the main track, and the
others on the switch by the movement described by the
witnesses ; and if they shall find that, while said engine and
part of the train was west of the crossing, the plaintiff on his
way home upon the county road approached the railroad,
and that he paused, or slowed up his horse to look and
listen, and that he neither saw nor heard any cars near the
crossing or in motion, and that he thereupon attempted to
cross and was suddenly struck by a car of the defendant's,
on which no light was visible to the plaintiff, running against
the right side of his buggy, as he was at the main track, and
that he was thereby thrown from his seat upon and between
the tracks of the switch, where he lay stunned and uncon-
scious, and was immediately run over and crushed by the
cars of the defendant moving along said switch ; and if the
jury shall be of opinion, under all the circumstances of the
case, that the injury complained of resulted from a want of
ordinary and proper care on the part of the defendant, its
agents and servants, in the management of its cars, and with-
out any fault of the plaintiff contributing thereto, then the
plaintiff is entitled to recover.   (Refused).

4th. Even though the jury believe that the plaintiff was
guilty of a want of ordinary care and prudence in crossing
or attempting to cross the defendant's tracks under the cir-
cumstances testified to before them ; yet, if they further
find, that the defendant by its servants and agents could
have avoided the injury complained of by ordinary care in
the management of its cars, after they saw, or by the exer-
cise of ordinary care might have seen the plaintiff lying in
the track in the position described by the witnesses, then
the plaintiff is entitled to recover.   (Granted).

5th. If the jury find for the plaintiff, they are to con-
sider, in estimating damages, the health and condition of
the plaintiff before the injuries complained of, as compared

438    WESTERN MD. R. R. CO. vs. KEHOE.

Statement of the Case.                [83

with his present condition in consequence of said injury; and whether said injury is in its nature permanent, also the physical and mental suffering to which he has been subjected by reason of said injury, and they are to allow him such damages as in the opinion of the jury will be a fair and just compensation for the injury which the plaintiff has sustained.    (Granted).

*Defendant's Prayers.*—1st. The defendant prays the Court to instruct the jury, that according to the uncontradicted evidence the plaintiff by his own negligence contributed directly to cause the accident complained of; that he has offered no evidence legally sufficient to entitle him to recover in this case, and that upon the pleadings and evidence their verdict must be for the defendant.    (Refused).

2nd. Defendant prays the Court to instruct the jury that the plaintiff is not entitled to recover in this case, because upon the case made by the evidence no ground of action has been shown, and their verdict must be for the defendant upon the pleadings and evidence in the case.    (Refused).

. 3rd. The plaintiff is not entitled to recover in this action, and the verdict of the jury must be for the defendant, because the evidence of the plaintiff shows the negligence of the plaintiff directly contributed to the accident which caused the injury complained of.    (Refused).

4th. It was the duty of the plaintiff, if he was approaching the crossing at a high rate of speed, to stop, look and listen before attempting to drive across defendant's tracks, and inasmuch as, according to the undisputed evidence in the case, he drove across the tracks without stopping, he is not entitled to recover in this case, and the verdict of the jury must be for the defendant.    (Refused).

5th. If the jury shall find from the evidence that on the evening when the accident complained of in this case occurred, the plaintiff was riding in a buggy, that he and his two brothers (the latter in another buggy) were driving along the Reisterstown Turnpike in the manner testified to

by the witnesses Ryland and Seitz, that they all then drove violently down the hill to the crossing at Howardville, where, by reason of his unduly rapid and careless driving, plaintiff's horse swerved towards the left out of the road and brought the left hind wheel of his buggy into contact with the signal post mentioned in the evidence, tearing the rim and spokes from the wheel, causing that side of the buggy to fall and throwing the plaintiff out upon the side track, where he lay unconscious and unseen upon the track some ten feet from the side of the county road until he was run over by defendant's cars as they were being drifted back into said side track, then the plaintiff is not entitled to recover in this case and their verdict should be for the defendant upon the issues joined in this case.   (Refused).

6th.  That it was the duty of the plaintiff, before attempting to drive across defendant's tracks, to look and listen for approaching cars, and either to stop his vehicle entirely or so far reduce its speed as to enable him to obtain the full use of his sight and hearing unimpeded by the movement or noise of said vehicle, and if they find that the defendant failed to do this, but drove rapidly across the track, and that his vehicle was struck by one of defendant's cars and himself knocked out and run over by the cars moving on the side track, then the plaintiff is not entitled to recover upon the issues joined in this case, even though the jury find further that the cars were being moved without the showing of any light or the ringing of any bell to give warning of their approach to the crossing.   (Refused).

7th.  To entitle the plaintiff to recover in this case the jury must be satisfied from the evidence not only that the defendant company was guilty of negligence in the handling and moving of its cars at the crossing where the accident complained of occurred, but that said negligence was the direct cause of the accident, and even though they should find that the defendant was guilty of such negligence, still the plaintiff is not entitled to recover upon the issues joined in this case, if they believe that, notwithstand-

ing said negligence, the accident would not have occurred if the plaintiff himself had used due care and caution in driving across the track. By negligence is meant a failure to exercise ordinary care, that is to say, such care as ordinarily prudent persons would exercise under such circumstances. (Refused).

8th. That it was the duty of the plaintiff, in driving across the defendant's tracks, to look and listen for trains or cars without regard to whether the bell was rung, light shown, or other signal of their approach given; and if the jury shall find that the plaintiff could by looking and listening have discovered the approach of defendant's cars in time to have avoided a collision with them, then he is not entitled to recover in this case, and their verdict must be for the defendant upon the issues joined in this case, even though they should find that no bell was rung or light shown. (Refused).

9th. That the plaintiff is not entitled to recover in this case unless the injury complained of was caused exclusively by the negligence of the defendant company—that is to say, exclusively by its failure to exercise ordinary care in the management of the cars alleged to have caused the injury; and if the jury find that such was not the exclusive cause of the accident, but that the plaintiff himself was guilty of lack of ordinary care in his attempt to cross the defendant's tracks, which lack of ordinary care directly contributed to cause the accident, then upon the pleadings and evidence in this case their verdict must be for the defendant. (Refused).

10th. Defendant prays the Court to instruct the jury that defendant's brakeman, Keefer, who had charge of the cars which ran over the plaintiff, was not bound to anticipate the likelihood or possibility of the plaintiff or anyone being, lying on the track or between the tracks, eight or ten feet beyond the crossing; and it was not negligence for said brakeman not to have looked for or seen the plaintiff lying at that point. (Refused).

11th. There is no evidence in this case legally sufficient to show that the injury complained of was directly due to any lack of ordinary care on the part of the defendant, and the verdict of the jury must be for the defendant upon the pleadings and evidence in the case.   (Refused).

The defendant excepted specially to the granting of plaintiff's first, second, third and fourth prayers upon the ground that there was no legally sufficient evidence to support their hypotheses.

The Court below (Burke, J.) granted plaintiff's fourth and fifth prayers and rejected plaintiff's first, second and third prayers, and rejected all of defendant's prayers.

The jury returned a verdict for the plaintiff for $12,000.

The cause was argued before McSherry, C. J., Bryan, Fowler, Briscoe, Page and Roberts, JJ.

*Charles Marshall* and *William L. Marbury* (with whom was *C. Bohn Slingluff* on the brief), for the appellant.

It must, of course, be apparent that the fact that the buggy crashed into the post in the manner above described, striking and tearing off, *not the fore wheel, but the hind wheel on the left hand side*, is totally irreconcilable with plaintiff's previous statement that he brought his horse down to a slow walk within fifteen feet of the crossing, and that the horse then got frightened and made a jump to *go across the track*, whereupon something struck the buggy on the *right* side. The only *reasonable* inference from this evidence is that if the car did strike the buggy as plaintiff intimates and O'Boy says that it did, it struck the buggy as the latter vehicle was on its way across the track on three wheels after its collision with the signal post.   And aside from all this, even if the evidence, when taken altogether and as a whole in the manner which we have indicated, could by any possibility be regarded as constituting legally sufficient support for the theory that plaintiff was not driving rapidly at all, but was approaching the crossing very slowly and with

great care when his horse became suddenly frightened,. plunged to cross the track in front of a car, which struck the buggy and caused the accident, still would that show that the plaintiff's injury was caused by any negligence on the part of the railroad company? According to this theory, it was the plunging forward of the horse which was the immediate cause of the accident, and unless there is evidence to show that this action of the horse was caused by some negligence of the defendant, the plaintiff had no case for the consideration of the jury on his own theory of the facts.    Now, there was absolutely no such evidence, direct or indirect, in this case.

It was the granting of plaintiff's fourth prayer that constituted the main error, although by no means the only error, of which the appellant complains in this case.    We will· first consider the general exception to this instruction. The instruction amounts in substance to this :    That a man may go off on a spree, fill himself up with beer or alternate drinks of beer and whiskey, get in a buggy, drive at a full gallop, racing with other persons engaged in the same amusement down a hill towards a railroad crossing (he being familiar with the locality and living in the neighborhood); that as the result of his reckless driving his buggy may smash into a signal post, the rim be torn from the left hind wheel, the buggy cross the track on three wheels ; in the course of its passage the plaintiff is dropped out upon the side track some eight or ten feet away from the crossing ; that he lies there in the dark, insensible and unseen, when a car which is being moved slowly along the siding runs over and injures him, and that under such circumstances he is entitled to recover $12,000 against a railroad company because, as he says, the persons in charge of the train did not keep a lookout for persons lying in the position in which he was lying and using the track in the manner and place in which he was using it, and, therefore, failed to see him in time to avoid the accident. ·

It is respectfully submitted that this instruction was con-

trary to the settled law of this State.    It is not pretended in
this case that the plaintiff had a right to be where he was
at the time the accident occurred.    This Court has held in
numerous cases, in accordance with the uniform current of
authority elsewhere, that a railroad company has the exclu-
sive right to the use of its own track at all places except at
regular crossings, where the public or private persons may
have a right of way ; that is to say, a right to use a cross-
ing as a crossing by traveling over it.    Here the plaintiff
was not at the crossing at all, but confessedly eight or ten
feet away from it, between the rails of the side track, al-
though even if he had been at the crossing it would make
no difference of principle, seeing that no one would claim
that he had a right to use the crossing as a bed.    His only
right to the crossing would have been to use it as such.
At any event, it must be conceded that he was where he had
no right to be, and that he was there as the result of his
own negligence, and negligence of the grossest character.
Now, under these circumstances, our proposition is that if
the persons in charge of the cars had actually *seen* the plain-
tiff in time to avoid running over him they were bound to
have stopped the cars; but that they were under no obliga-
tion whatever to be looking out for people in such a posi-
tion as the plaintiff was then lying and at such a place.    See
*Ricketts* v. *B. & O. R. Co.*, 69 Md. 494 ; *Maryland Central
Co.* v. *Neubur*, 62 Md. 391 ; *Railroad Co.* v. *Houston*, 95
U. S. 697 ; *P. & R. R. Co.* v. *Hummell*, 44 Pa. St. 375 ;
*Miller* v. *B. & O. R. Co.*, 58 Md. 225 ; *Houston R. Co.* v.
*Sympkins*, 54 Texas, 615.

*D. G. McIntosh* and *Randolph Barton, Jr.*, (with whom
was *Redmond C. Stewart* on the brief), for the appellee.

The plaintiff's first prayer calls for a finding of two con-
current state of facts, which, when thus concurring, estab-
lish a ground of recovery ; (*a*) an injury directly occasioned
by defendant's negligence (*b*) without any fault on the part
of the plaintiff.    *State use of Bacon* v. *B. & P. R. R.*, 58 Md.

at p. 484.    As to (*a*).    It was competent for the jury to say whether under the circumstances the conduct of defendant (if the facts are found as set forth in the prayer) was negligent or not.  . This Court has. held such a movement of cars as is described in the prayer to be negligence *per se.*    *Pa. R. Co.* v. *State use of McGirr*, 61 Md. 120 ; *Kean* v. *B. & O.*, 61 Md. 168.    See also *Patterson " Railway Law,"* section 171 : " Extraordinary precautions should be taken if a train or engine is to be *backed* over a crossing, and especially must the greatest care be observed if cars are to be ' kicked ' or sent on a flying switch over a crossing." See 19, *Amer. and Eng. R. R. cases*, 283, 342 ;   *C. R. I. & P. R. Co.* v. *Digman*, 56 Ill. 488.    As to (*b*).    The facts called for in the prayer establish the exercise of all requisite care on the part of plaintiff.    *Cook* v. *Traction Co.*, 80 Md. 558.    Certainly sufficient to go to the jury.    *B. & O.* v. *Owings*, 65 Md. 512.    The only other thing plaintiff could have done was to actually *stop*.    But such is not required of him by Maryland law, in view of the evidence as to the nature of the crossing, and the conduct of the driver of the vehicle crossing immediately in front of him.    *Union R. Co.* v. *State use of Steever*, 72 Md. 158 ; *State use of Ricketts* v. *B. & O.*, 69 Md. 497 ; *Md. Cent.* v. *Neuber*, 62 Md. 399.

The plaintiff's fourth prayer is based upon these propositions : (*a*) Defendant is liable, notwithstanding plaintiff's negligence, if, by the exercise of proper care, it could have avoided the consequences of such negligence.    (*b*) There is evidence in the case legally sufficient to show that the results of plaintiff's negligence, if any, might have been avoided after his position was, or might have been, seen. (*c*) There is evidence of facts legally sufficient to establish a want of ordinary care on the part of defendant's servants in not seeing plaintiff's danger.    As to (*a*).  ." It is a well established principle, that while *concurrent* negligence of both parties will bar recovery by either, the mere fact that there was negligence on both sides will not disentitle the injured party to recover against the other ; provided that the other

could, subsequent to the negligence of the first, have avoided the consequences of such negligence, however gross it may have been in placing himself in a position of danger by the exercise of ordinary care." *Lewis* v. *B. & O. R. Co.*, 38 Md. 599 ; *Kean* v. *B. & O. R. Co.*, 61 Md. 167 ; *N. Ry. Co.* v. *Arnreich*, 78 Md. 592. As to (*b*). " In order, however, for this doctrine to apply, it must appear that there was *time* for one party to become aware of the negligence of the other, for neither could be required to anticipate the other's negligence." *N. C. R. Co.* v. *Geis*, 31 Md. 366 ; *Lewis* v. *B. & O.*, 38 Md. 600 ; *Kean* v. *B. & O.*, 61 Md. 170 ; *Balto. Traction Co.* v. *State use of Ringgold*, 78 Md. 424.

In the case of *Gass* v. *Mo. Pac. Ry. Co.*, 59 Mo., App. 574 (1894), (a very similar case), the Court, in sustaining an instruction similar to the one now under discussion, says : " The instruction does not confine itself to what the servants might have seen from the *position they actually were* at the moment preceding the accident, but it embraces positions where, by the exercise of reasonable care on the part of the servants, they *should have seen*." (Note.—This same case holds that " it is not necessary that there should be any evidence in *affirmative terms* that any of the defendant's servants saw the plaintiff before the accident, or that they, by due diligence, might have seen him, yet there is abundant evidence from which they could infer it or reasonably presume it. If the defendant's servants had been on the lookout, as they should have been, they would have seen the plaintiff."

As to the evidence of the position of the train crew : 1. There was *no one* at the crossing to keep a lookout. 2. The crew were distributed as follows : Norman and Dotterer, the engineer and fireman, on the engine up the track ; Wilderson, the conductor, at the opening of the switch, 125 feet away ; O'Boy, one brakeman, on the car running down the main track ; the second brakeman at the far end of the train. Keefer, the man on the three cars, and the *only one relied on to keep a lookout* while these cars were passing a

crossing, was, according to his own statement, anywhere between the far (the receding) end of the three cars and the platform between the first (the advancing) and second cars. Witness was standing up and at the brake between the first and second cars, counting from the east end.  When he cut the cars off the witness walked across the first and second car.  Witness was *next car to the engine.*  This was undoubtedly evidence to go to the jury, whether, *conceding* defendant's agents were bound to keep a lookout (see under *c*), they took proper precautions to do so.  As to (*c*).  It is objected, however, that there is no evidence that defendant's servants actually *saw* the plaintiff's danger.  There is abundant evidence, however, of facts from which the jury were entitled to find that it was *negligence in them not to have seen him.*  In certain cases it has been held that in order for this doctrine to apply, there must be evidence that defendant neglected to take due precautions *after he actually saw* plaintiff's negligence.  *Rickett's case,* 69 Md. 497; *Schroeder's case,* 69 Md. 555.

But in all such cases defendant, up to the time when the negligence of the first was discovered, was neglecting no duty in regard to keeping a proper lookout, and hence could not be said to be guilty of a want of ordinary care in not discovering the plaintiff.  As for instance, where the plaintiff was a *trespasser* on defendant's exclusive right of way, the Court holding that there was no duty on the part of the trainmen to keep a lookout for the protection of such. And even after they are discovered, *in the absence of indication to the contrary*, it will be fair to presume that they will get out of the way.  *B. & O.* v. *Savington,* 71 Md. 599; *Schroeder's case,* 69 Md. 558; *Rine* v. *Chic. & Alton Ry. Co.*, 88 Mo. 392.  Where, however, the law imposes a duty, in order to avoid injury to others who have an equal right of passage, of keeping a vigilant lookout, there the time in which, in contemplation of law, defendant might have avoided the consequences of plaintiff's negligence dates not from the moment when such negligence was actually

WESTERN MD. R. R. CO. vs. KEHOE.   447

Md.]                    Opinion of the Court.

discovered, but from the time at which, had proper vigilance been observed, it might have been discovered.

Here the evidence shows that Keefer, or any of defendant's employees, did not see the plaintiff lying on the track ; not because they were *looking at the precise 30-foot confines of the highway* (even assuming that the plaintiff was not within those limits), but because they were not looking, or were not in a position to see at all. If they had been watching the 30 feet of the road, they would have seen a man a foot or two beyond it. The whole *raison d'etre* of the rule requiring watchfulness on the part of the trainmen while *at a public crossing* precludes the idea that such vigilance is to be confined exclusively to the precise mathematical boundaries of the highway. It must mean the *locality* at which persons using the highway may be endangered in crossing the railroad tracks. And if there ever was a time when this vigilance ought not to be relaxed, it was at a moment when, according to defendant's own statement, cars were being shifted backward and forward, *at night*—running by their own momentum and in the noiseless fashion in which, as common experience teaches, cars so running will move along, lighted, at best, only by a small hand lantern (and which was, at least in Keefer's case, a full car length away from the end), with no one stationed at or near the crossing to warn either travellers on the highway or the persons operating the cars, and where the only persons relied on by defendant thus to keep a lookout for people at the crossing was the man in charge of moving cars.

McSHERRY, C. J., delivered the opinion of the Court.

This suit was brought to recover damages for a personal injury sustained by the appellee in consequence of the alleged negligence of the appellant. With respect to some of the circumstances testified to there was conflict in the evidence, but some of the facts seem to be unquestioned. According to the plaintiff's version of the occurrence he was driving alone in a buggy on July the thirteenth, eigh-

teen hundred and ninety-five, about ten or ten-thirty P. M., along a public road in Baltimore County called the Seven Mile Lane, and his two brothers, in another buggy, were twenty or thirty yards in advance of him.  This Seven Mile Lane is crossed at grade by the main track and a siding of the Western Maryland Railroad, at a place called Howardsville.  His brothers crossed the tracks and when the plaintiff neared them he brought his horse down to a slow walk, looked and listened, and not seeing or hearing any cars he attempted to cross.  His horse, he says, gave a jump and started off.  He tried to check the horse and then something struck the buggy on the right side and the plaintiff remembered nothing more.  On the evening in question a freight train of the defendant company, proceeding from Baltimore westward, stopped at Howardsville station to remove from the siding two of the five cars that were there.  The whole train, accordingly, stopped east of the crossing, that is, before reaching the crossing.  The engine after being cut loose from the rest of the train moved over the crossing up to the switch, about one hundred and fifty feet west of the crossing.  It then backed down the switch into the siding, drew out the five cars therefrom to the main track, shoved the rear one, a box car in charge of a brakeman, down the main track towards the detached part of the train, dropped three gondola cars, also in charge of a brakeman, back over the switch into the siding, and then with the remaining car backed down the main track and coupled to the train.  There is a down grade from the switch post to the crossing, and the cars drifted down both the main track and the siding at the rate of four or five miles an hour.  The brakeman in charge of the box car testified that he saw a buggy pass rapidly over the tracks in front of his car, and immediately afterwards a second buggy attempted to cross, but was struck by his car, and he instantly called out, "stop the cars."  In a moment afterwards the train hands found the plaintiff lying between the main track and the siding from six to twelve feet east of the east mar-

gin, and therefore outside the limits of the crossing, with one leg over the inner rail of the siding. Over this leg the gondola cars had passed, crushing it so badly that amputation below the knee became necessary. There was no evidence adduced on the trial to controvert or question the fact that the plaintiff was, when run over, wholly off the crossing and wholly on the company's right of way. On the part of the defendant it was shown that the plaintiff and his brothers, together with others, had been drinking quite freely during the afternoon and evening ; that they were speeding their horses—driving in a gallop—down the Seven Mile Lane towards the railroad, and that within fourteen feet of the track the plaintiff drove into a post supporting a signal, tore off the left rear wheel of his buggy and dashed across the track on three wheels without the buggy coming in contact with a car. It is a fair inference that in thus crossing the track he was thrown out of the buggy, not because the buggy was struck by a car, but because the left rear wheel being off the buggy tilted to that side, and upon that side he fell. It was further shown that the brakeman who was in charge of the three gondola cars that must have caused the injury to the plaintiff by running over his leg, because they were the only cars that passed down the siding after the plaintiff attempted to cross, was standing between the first and second cars, and that he saw no one on the track ahead of him and heard no shout to stop the cars. No employee of the company saw the plaintiff lying on the track before he was run over. It was also proved by a disinterested witness that having heard the noise made by rapidly approaching horses and then a crash—possibly the crash against the signal-post—he went to his window and from there saw a dark figure lying on the track of the siding, and at the same instant he noticed the gondola cars moving along the siding over the crossing towards the figure, over which they passed in a moment ; and upon hurrying to the spot he found the plaintiff had been injured.

Upon the conclusion of the evidence the plaintiff pre-

sented five and the defendant eleven prayers for instructions to the jury.   The plaintiff's fourth and fifth prayers were granted, and his first, second and third and all of the defendant's were rejected.   The verdict and judgment were for the plaintiff, and the defendant has appealed.   The fourth prayer of the plaintiff is in these words : '' Even though the jury believe that the plaintiff was guilty of a want of ordinary care and prudence in crossing or attempting to cross the defendant's tracks under the circumstances testified to before them, yet, if they further find, that the defendant by its servants and agents could have avoided the injury complained of by ordinary care in the management of its cars, after they saw, or by the exercise of ordinary care might have seen the plaintiff lying in the track in the position described by the witnesses, then the plaintiff is entitled to recover."

Now, actionable negligence consists in an inadvertent breach of a legal duty that is due.   " Some relation of duty public or private, special or general must exist, either by contract or as an implication of public policy, before one man becomes liable to another for the consequences of a careless act or omission on the part of the first man which causes injury to the second man, and where such duty does exist and such careless act or omission occurs causing an injury in direct and regular sequence, the careless act becomes in the eyes of the law actionable negligence for which the party injured has a right of action against the person inflicting the injury."   *Pollock on Torts*, 352 ; *Nat. Sav. Bk.* v. *Ward*, 100 U. S. 195 ; notes to *Curtin* v. *Somerset*, 12 L. R. A. 322.   The legal duty whose breach is negligence has reference to and is measured by some correlative right of another with which it is co-extensive ; and such a legal duty has been defined by Dr. Wharton as " that which the law requires to be done or forborne to a determinate person or to the public at large, and is correlative to a right vested in such determinate person or in public."   *Whar. on Neg.*, sec. 24.   This breach can consist, either, in the failure

to do that which ought to be done, or in doing that which ought not to be done. *Heaven* v. *Pender*, L. R. 11 Q. B. 506. But the duty on the one side is only the correlative of the right on the other side ; and hence the duty to act or to refrain from acting cannot be extended beyond the right to have the act done or refrained from. Beyond the limits or scope, therefore, of a particular right, as that right is defined, there is no corresponding legal duty due ; and if there be no duty due there can be no breach and consequently no negligence. *Kahl* v. *Love*, 37 N. J. L. 5.

The fourth prayer granted by the Court below comprises two conflicting propositions, either one of which, if sufficiently supported by evidence, would present a good cause of action ; but both of which, because conflicting, cannot be combined in one and the same instruction. The conditions under which a recovery could be had on the one are essentially different from those which must exist to sustain a recovery on the other. And this is so because the right of the plaintiff and the consequent and correlative duty of the defendant in the one instance are widely and essentially different from the right and its reciprocal duty in the other. As the rights are dissimilar the duties measured by them are likewise variant. The prayer is founded on the postulate that the plaintiff was guilty of negligence in crossing the tracks. Proceeding upon this assumption it sets forth as one cause of action—as one ground of recovery—a breach of the duty which the defendant owed to the plaintiff not to run over him after its servants saw him on the track ; and it sets forth as the other or conflicting cause of action or ground of recovery, a breach of duty in not knowing or seeing that he was in fact lying on the track. It is obvious, then, that the one duty arose from a knowledge on the part of the company's servants that the plaintiff was in a place of peril ; and that the other duty arose from the servants' want of knowledge of that peril, and a want of knowledge owing to a lack of due care when the servants were bound to know or to anticipate that the peril existed or might exist.

As no one has a right to be negligently or wrongfully on a railroad track, the company owes no duty to a person so situated to anticipate that he will be in such a position ; but if its servants see him in a place of peril, though he be wrongfully or negligently there, then the duty arises to avoid injuring him if possible.    The duty which the company owes to a such a person originates only when the perilous position is seen or known by the company's servants.    When, therefore, a plaintiff is wrongfully or negligently on the tracks of a railroad in a position of peril, as the prayer we are considering assumes was the fact in the case at bar, the duty of the company to use due care to avoid injuring him arises at the moment the servants of the company see and become aware of his peril ; and hence, to sustain this branch of the prayer, it was essential for him to show, first, that the company's servants had knowledge of his peril ; secondly, that they had that knowledge in time to arrest an injury ; and thirdly, that they failed to exert proper care to avoid the injury after acquiring knowledge of the peril.    Until the employees are made aware of the peril arising from an act of negligence on the part of the plaintiff, they are under no obligation to assume that he will be negligent or will be in a dangerous place which he has no right to occupy ; and consequently they owe him no duty to anticipate that he will be where he ought not to be, or to guard in advance against the possible or even probable results of his unknown wrongful occupancy of the tracks.    And as they owe him no such duty their failure to perform it is not an act of negligence on the part of the company.    *Balto. Traction Co.* v. *Ringgold*, 78 Md. 409 ; *Kean* v. *B. & O. R. R. Co.*, 61 Md. 154.    There is not a pretence that any employee of the defendant saw the plaintiff lying on the siding, and it was obvious error, in view of the special exception taken to this prayer and founded on the want of such evidence, to leave to the jury the finding of a fact which there was no evidence whatever to establish. If, being where he was as the result of his negligent attempt to cross the tracks he was not seen by the employees of the defendant, then the duty to use due care and caution not to

WESTERN MD. R. R. CO. vs. KEHOE.    453

Md.]                    Opinion of the Court.

injure him, despite his own negligence, never arose ; because, as we have said, that duty, under these conditions, has its origin in the fact that he was seen and that his peril was known.

The second cause of action relied on in the prayer is that the company is liable if its servants, by the exercise of ordinary care, might have seen the plaintiff lying on the track in the position described by the witnesses, notwithstanding he was guilty of negligence in attempting to cross in the way he did.    This proposition of the prayer assumes as a legal principle that it was the duty of the employees, "under the circumstances testified to," to have seen the peril of the plaintiff, which had resulted, as the prayer concedes, from his own negligence; and that their failure to see that peril, though the peril arose from the plaintiff's carelessness, and though he was in a place where he had no right to be, was a breach of the legal duty due the plaintiff, and was, therefore, negligence on the part of the defendant that warranted a recovery.    The extent and limits of the defendant's duty are determined and defined by the scope of the plaintiff's correlative right.    Now, the plaintiff had the right to be on the highway and the right to use it in crossing the tracks of the company.    The railroad company had an equal right to cross the highway with its tracks and with its cars upon the tracks.    The right which the plaintiff had created a reciprocal duty on the part of the company and imposed upon it the obligation to use due care that the plaintiff should not be injured by its employees whilst he was lawfully exercising his undoubted right to use the highway, as a highway, over the railroad crossing.    But this duty or obligation on the part of the defendant was not broader or more extensive than the plaintiff's right to the use of the highway.    His right to use it as a crossing gave to him no right to use it for a totally different purpose.    And his right to use it at all was obviously qualified by an obligation on his part to exercise proper care himself in using it ; and hence his right to use it with due care gave him no right to use it recklessly. His right was a right of transit along the highway and across

454    WESTERN MD. R. R. CO. vs. KEHOE.

Opinion of the Court.                              [83

the tracks, and to that extent the duty of the company to use due care not to abridge or invade that right was imperative, and carried with it the obligation to exercise that degree of diligence which might be necessary to avoid an injury to him whilst he was in the lawful enjoyment or pursuit of that right.    This obligation of the company did not go farther or require the company to anticipate, either, that the plaintiff would be guilty of negligence in using the highway, or that he would use it or attempt to use it for a purpose not within the limits of his admitted right.    As to those unwarrantable uses that are beyond and outside the scope of his legitimate right, no duty to guard in advance against their consequences is imposed by the law ;  and necessarily, therefore, no negligence can be predicated of a failure to take such precautions.    All railroad companies are under an imperative obligation, upon approaching a road crossing, to use due care and caution to avoid injury to others lawfully traversing the highway ; and to the extent that they fail to employ that care and caution they are responsible for injuries resulting from such omissions.    But this duty is only co-extensive with the correlative right of the individual to use the highway for purposes of transit, and clearly imposes no obligation on the company's servants to be on the lookout for persons negligently lying on the track outside of the limits of the highway, for that is not a use of the highway at all.    Now, if the plaintiff was lying beyond the limits of the highway with his leg across a rail of the siding, as testified to by all of the witnesses who saw him after the accident, he was obviously not then using the highway for the only legitimate purpose which he was authorized to use it—he was not in the exercise of the right which he possessed—and there was clearly no obligation imposed by law on the employees of the defendant to look for him where he was or to assume that any person might be there when the cars drifted down the siding towards the crossing ; and if there was no such obligation, their failure to see him where he had no right to be was no breach of duty owed to him, and was, therefore, not negligence.

WESTERN MD. R. R. CO. vs. KEHOE.    455

Md.]                    Opinion of the Court.

There is no analogy between a case like this and cases
arising out of injuries inflicted by street railway companies
upon persons who have an equal right with the railways to
use the public thoroughfares for travel.    *Cook* v. *Baltimore
Trac. Co.*, 80 Md. 551 ; *Lake Roland Co.* v. *McKewen*, 80
Md. 593.    Every portion of a street railway's track is a
public crossing, because persons have the right to cross
those tracks at any point along the thoroughfare ; and hence
the obligation on the part of the company's employees to
keep a constant outlook for persons crossing or approach-
ing the track extends to the whole line of the road.

It must be understood that what we have said in discuss-
ing the fourth prayer is based upon the assumption which
the prayer itself adopts—that the plaintiff's position on the
tracks was due solely to his own negligence.    This was the
hypothesis upon which the case went to the jury.    If, on
the other hand, the jury had been required to find that the
plaintiff's position on the track when he was run over by
the gondola cars was the result, not of his own negligence,
but of the carelessness of the defendant in striking the buggy
with its car, as was the theory upon which the plaintiff's
first, second and third prayers were constructed, a different
state of case would have been presented.    We see no reason
why those prayers should not have been granted.

Upon well-settled principles which have been so often an-
nounced that no useful purpose would be served by repeat-
ing them, we think there was error in refusing to grant the
defendant's fifth, sixth, seventh, eighth and tenth prayers ;
but we discover no error in the rejection of the others.

From what we have said it is apparent that there was
error in granting the plaintiff's fourth prayer, and because
of that error, and because of the rejection of the defendant's
fifth, sixth, seventh, eighth and tenth prayers, the judgment
will be reversed, with costs, and a new trial will be awarded.

*Judgment reversed, with costs above
and below, and new trial awarded.*

(Decided June 17th, 1896).