## THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* STATE, use of EMMA A. WELCH.

*Negligence—Injury to Person on Private Right of Way of Railroad Company by Engine Running Backward—Knowledge of Perilous Situation of the Trespasser—Custom of Public to Cross Railway Track—Questions for the Jury—Evidence—Instructions—Discrediting Witness—Waiver of Prayer Withdrawing Case from Jury by Offer of Evidence in Defense—Lookout on Tender of Engine Running Backward.*

In an action to recover for injury inflicted upon a person who was at the time on the private right of way of the defendant railroad company, evidence is inadmissible to show that people generally were accustomed to cross the tracks of the defendant in that vicinity. The fact that the railroad company fails to prohibit the public from going on its tracks does not create a right in the public to do so, nor impose on the company an obligation to make special provision for the protection of such trespassers.

The provision of Baltimore City Code, Art. 30, sec. 14, requiring a lookout to be stationed on the rear of the tender of a locomotive going backwards within the city limits has been previously held to be obsolete; and therefore that municipal regulation is not admissible in evidence in an action to recover damages for a collision between the tender of a locomotive and a trespasser on the tracks.

Before a witness can be discredited by proof of former contradictory statements made by him, a foundation must have been laid by interrogating the witness as to the time, place and persons to whom the alleged contradictory statements were made, and the witness must have been asked whether

or not he had said or declared that which it is intended to prove.

When at the close of plaintiff's evidence the defendant offers prayers withdrawing the case from the jury, which are rejected by the Court, and the defendant elects to go on and offer testimony in defense, that testimony must be considered for the purpose of determining whether the plaintiff's evidence is legally sufficient to go to the jury.

Defendant company's engine and tender were running back slowly at the speed of about two miles an hour on defendant's private right of way. A city street ran to the tracks at that point, but did not extend across them. At a place on the tracks near that street, a boy, fourteen years old, was struck by the tender and killed. In an action for damages therefor, one of the plaintiff's witnesses testified that when the engine was a block and a-half away he saw that the boy's foot was caught and held between the switch point and the rail; that the boy was screaming and trying in vain to pull his foot loose, but was held fast until he was struck. Other witnesses for plaintiff did not see the boy until the engine was almost upon him. The defendant's witnesses, being the persons on the engine, testified that they looked back in the direction it was going and did not see the boy. *Held,* that if it be conceded that the boy was a trespasser on the track and the employees of the defendant in charge of the backing engine owed him no duty until they became aware of his presence on the track in a position of danger, yet the evidence is such that the case should have been submitted to the jury, since the plaintiff's evidence is legally sufficient to show that the defendant's agents were made aware of the boy's perilous situation in time to avoid the injury by the exercise of ordinary care.

*Held,* further, that a prayer offered by the defendant is erroneous which assumed that the duty of the defendant's servants to exercise care to avoid injury to the boy began only when they *saw* his danger. Under the plaintiff's evidence they could have been informed of his peril by his cries of distress before they saw him.

*Held,* further, that a prayer offered by the plaintiff is erroneous which instructs the jury that if they find that persons were accustomed to cross the tracks of the defendant at that point, it was the duty of the defendant's agents to keep a lookout for them and exercise special care for their protection. The duty of railroad agents to look out for and exercise care to avoid injury to persons at railway crossings and upon public highways, where such persons have a right to be and may be expected to be found, is different from the care required of them in regard to the presence of trespassers on railway tracks where they have no right to be and where they are not expected to be found.

*Decided January 11th, 1911.*

Appeal from the Superior Court of Baltimore City (SHARP, J.), where there was a judgment on verdict for the plaintiff for $1,200.

*Plaintiff's First Prayer.*—That if the jury find from the evidence that on or about August 15th, 1909, the defendant owned and operated a railroad in Baltimore City on Wells street; that at the foot of Byrd street there is a space on each side of the tracks of said railroad which is used by pedestrians as a thoroughfare; that there are two main tracks, one for eastbound and one for westbound trains; that near the foot of Byrd street said eastbound track is, by means of a switch, connected with a sidetrack, as testified to and as shown by a plat offered in evidence; that the plaintiff's deceased, while in the act of crossing said tracks on Wells street, about or almost at the foot of Byrd street, had his foot caught in said switch, which was closed from the defendant's tower, holding him fast, and that while in this perilous position, one of the defendant's engines with tender ahead, moving backwards off the said siding, with no lookout on said tender, ran over him, resulting in his death within a few hours, and that

at the place where said boy was struck many people were at that time, and had been for several years prior thereto, accustomed to use said track as a footpath to and from points in the southern parts of the City of Baltimore, and that said track had been used in this way continually for many years, and that the defendant's servants and agents in charge of said engine could reasonably have expected to find persons on said track at that place on account of the frequent and continuous use thereof by footmen; and that there were no known or express rules or warnings against said use of said track at said place, and shall further find from all the evidence in the case that the defendant's servants or agents could, by the exercise of reasonable care and diligence, have seen said boy caught in said switch a reasonable distance ahead of said engine to have stopped same before said injury occurred, but the defendant's agents and servants in charge of said engine, through their carelessness and negligence, either failed to observe said boy in said perilous position, or to take such other action as a reasonably prudent man would have taken to avoid said accident; that said place of accident is in a well-populated section of the city; then the jury should find for the plaintiff, notwithstanding they may believe from the evidence that said boy had no legal right to cross said track, but was a trespasser in attempting to do so.    (*Granted.*)

*Defendant's Fourth Prayer.*—That the defendant is not liable in this case, unless they find that the accident was entirely and directly caused by its negligence, and if they find that the deceased was in any manner guilty of negligence which in any way directly caused the accident, then their verdict must be for the defendant, unless they believe that the defendant's agents saw the deceased or by the exercise of reasonable care ought to have seen him in a position of peril in time to have avoided the accident by the exercise of due care. (*Granted as amended.*)

The cause was argued before Boyd, C. J., Briscoe,
Pearce, Schmucker, Burke Pattison and Urner, JJ.

*Duncan K. Brent* and *Allen S. Bowie*, for the appellant.

*Linwood L. Clark*, for the appellee.

Schmucker, J., delivered the opinion of the Court.

The appeal in this case is from a judgment of the Superior
Court of Baltimore City against the appellant company for
damages for fatally injuring the son of the equitable appellee
by one of its locomotives.

It appears from the record that on the afternoon of Sun-
day, August 15th, 1909, James H. Welch, a minor son of
the equitable appellee, about 14 years old, was run over and
fatally injured by the tender of a locomotive of the appellant
while it was backing along a switch on what is known as
Wells street at or near the foot of Byrd street in Baltimore
City. The entire bed of what is called Wells street was then
owned by the appellant and occupied by its east and west
bound main tracks and several switches. The boy was there-
fore at the time of his injury a trespasser upon the appellant's
track unless he was present there by virtue of some implied
license or permission from it.

The evidence both as to the details of the accident and the
current uses of the locality of its occurrence are quite con-
flicting.

Wells street runs east and west. The territory lying north
of it in the vicinity of the accident comprises part of the
improved portion of the city, and contains many houses of
the plainer sort such as are usually occupied by laboring peo-
ple and factory operatives. The land lying south of the
street at that point contains but few residences and is prac-
tically unimproved except by the appellant's roundhouse and
coal chute and some factory buildings. Byrd street runs
northerly from Wells street and at right angles to it, but

does not intersect or cross it.   South of Wells street, immediately opposite the foot of Byrd street, is situated the factory building of the National Enameling and Stamping Company, which ordinarily employs from 700 to 800 persons. The roundhouse, coal chute and yards of the railroad company lie a short distance east from the factory of the Enameling and Stamping Company.

The accident by which the appellee's son was injured occurred at a point almost opposite the foot of Byrd street on the track of a switch running along the bed of Wells street from the appellant's roundhouse to its main tracks and lying south of both of the main tracks.   The witnesses for the defendant place this point further away from the line of Byrd street than those for the plaintiff.   On the south of Wells street about two squares east from the foot of Byrd street there is a roundhouse of the appellant, and also a coal chute, from which the engine was backing along the switch toward the main track when it ran over the boy.

There is evidence in the record tending to prove that many of the operatives employed in the factory of the Enameling and Stamping Company and also other persons had for years past been in the habit when going to and from their work of crossing the defendant's tracks on Wells street in the vicinity of the factory without hindrance or opposition, and that there were no signs or warning near the place forbidding such crossing.   This evidence does not tend to show the existence of fixed or definite places of crossing, but rather tends to establish a habit of crossing the tracks at will whenever persons wished to go over them.

There is also evidence in the record tending to show that the boy was on the track where he was injured from the time that the engine started from the coal chute, about a block and a half away, and that he was in full view from the engine while it was backing up to him.   One witness testified that the boy was fastened to the track by having his

foot caught between the switch point and the rail when the switch was thrown, and was screaming and ineffectually struggling to free himself when he was run down by the tender of the backing engine. Other witnesses described the boy's action as the tender came upon him by saying that he "kind of raised off his feet" and "gave a sort of jump to get out the way of the engine," moving about six feet in the effort, or that he was walking on the track in front of the tender and started to run and fell. There is, on the contrary, evidence tending to show that it was impossible for the boy's foot to have been caught in the switch in the manner testified to by the witness who said that he saw him with his foot so caught.

There were three persons on the engine—the engineer and fireman, who were in charge of it, and a brakeman who was riding on it to his place of work at Camden Station. The brakeman testified that he was looking back over the tender all of the way up to the place of the accident, and did not see the boy until after he was injured. The engineer testified that he was on the left-hand side of the engine looking backwards in the way he was going until he got to switch No. 29, the place of the accident, and did not see the boy. The fireman testified that he was putting coal in the firebox and not looking at the track.

There was also evidence tending to show that the tender was one of the modern type, at the rear of which there was no provision for a person to stand as a lookout and that it would not be safe for anyone to stand there.

The case was tried before the Court and a jury, and the trial resulted in a verdict and judgment in favor of the plaintiff, and the defendant appealed.

Twelve bills of exception appear in the record, of which eleven relate to rulings on the admissibility of evidence and one to the Court's action on the prayers.

The first three exceptions were taken to the admission by the Court, over the defendant's objection, of testimony tend-

ing to show that persons had long been in the habit of walking along Wells street and crossing the defendant's tracks in the vicinity of the place of the accident. The Court below erred in admitting this testimony. The north and south streets in that section do not cross the property of the defendant which we have designated as Wells street, nor is there any evidence of the existence of any legalized public crossing of the railroad tracks at or near the place where the boy was run over. In *B. and O. R. R.* v. *Allison,* 62 Md. 487, we said: "A right of way of a railroad company is the exclusive property of such company, upon which no unauthorized person has the right to be, and anyone who travels upon such right of way as a footway and not for any business with the railroad is a wrongdoer and a trespasser; and the mere acquiescence of the railroad company in such user does not give the right to use it or create any obligation for especial protection. *R.. R. Co.* v. *Godfrey,* 71 Ill. 500. Whenever persons undertake to use the railroad in such case as a footway they are supposed to do so with a full understanding of its dangers and as assuming the risk of all its perils." We cited many authorities for what was thus said and we have given expression to similar views in more recent cases. *Price* v. *P., W. and B. R. R. Co.,* 84 Md. 512; *Reidel* v. *P., W. and B. R. R. Co.,* 87 Md. 156; *Westn. Md. R. R. Co.* v. *State, use of Kehoe,* 83 Md. 434; *Ches. B. R. R. Co.* v. *Donahue,* 107 Md. 128. Those cases differ in principle from *McMahon's case,* 39 Md. 438, and *Sheridan's case,* 101 Md. 50, where the accident occurred to a person using a public street which was blocked by the cars which injured him.

The fourth exception was taken to the admission in evidence over the defendant's objection of section 14 of Art. 30 of the Baltimore City Code of 1906, requiring a locomotive when used within the city limits to have a man riding on its front when going forward and on its tender when going backward, not more than 12 inches from the bed of the road, &c., &c. That section has been held by us to be now practically

obsolete and inoperative in *B. and O. R. R.* v. *State, ues of Mali,* 66 Md. 59, and *State, use of Harvey,* v. *B. and O. R. R. Co.,* 69 Md. 346. We therefore think the ordinance in question should not have been admitted in evidence.

The fifth exception was to the refusal of the Court to grant the defendant's prayers to take the case from the jury, when offered at the close of the plaintiff's case. The defendant, under the settled law of this State, lost the benefit of that exception by introducing its evidence, but as the same prayers were again offered at the close of the whole case their propriety will be considered by us later on.

The sixth and seventh exceptions were taken to rulings similar to those presented by the first three exceptions, and are sufficiently disposed of by what we have said in that connection.

The eighth to the eleventh exceptions, which related to the effort of the plaintiff to contradict certain testimony for the defendant, were well taken because no sufficient foundation had been laid for the proposed contradiction. It is well settled that before a witness can be discredited by proof of former contradictory statements a foundation for such proof must have been laid by interrogating the witness as to the time, place and person to whom the alleged contradictory statements were made, and the witness must have been asked "whether or not he had said or declared that which is intended to be proved." *Higgins* v. *Carlton,* 28 Md. 115; *Brown* v. *State,* 72 Md. 475; *Peterson* v. *State,* 83 Md. 194. The questions which had been put to the defendant's witnesses touching the matters in respect to which it was proposed to contradict them were not such as the law requires.

At the close of the case the plaintiff offered two prayers, both of which the Court granted, and the defendant offered seven, all of which the Court rejected except the fourth, which it granted in a modified form.

We find no error in the rejection of the defendant's first, second and third prayers, when again offered at the close of

the whole case, each of which sought to take the case from the jury. These prayers having been offered and rejected at the close of the plaintiff's case and the defendant having elected to go on and offer its testimony, that testimony must be considered by us for the purposes of the present inquiry in so far as it may be avalable to support the plaintiff's case. *Barabas* v. *Kabat*, 91 Md. 53; *Carroll* v. *Manganese Safe Co.*, 111 Md. 252. Conceding the defendant's contention that the plaintiff's deceased must be regarded as having been on its track as a trespasser when he was injured, and that therefore under our rulings in *Kehoe's case*, 83 Md. 434; *Millslagle's case*, 73 Md. 74; *Price's case*, 84 Md. 506, and *Donahue's case*, 107 Md. 119, its employees in charge of the backing engine owed him no duty until they became aware of his presence on the track in a position of peril, we still think there was evidence in the case requiring the Court to send it to the jury.

The plaintiff's witness Trump, whose testimony for the purpose of the present inquiry must be taken to be true, testified that the boy's foot was caught between the switch point and the rail when the engine was a block and a half away from him, and that he screamed and yelled and tried in vain to pull his foot loose, but he was held fast until the tender ran over him. As the engine and tender approached him they moved at the rate of but two miles an hour. Both the engineer and the brakeman who were then on the engine testified that they were looking back in the direction in which they were moving, all of the time, and did not see the boy toward whom they were going until after the tender had passed over him. If those two witnesses told the truth, Trump could not have done so; but their evidence was not conclusive of the fact and the jury may not have believed them. The onus was undoubtedly upon the plaintiff in order to support her case to produce evidence sufficient to satisfy a reasonable jury that the defendant's agents were made

aware of the presence of the boy ahead of them in a position of peril in time to have avoided injuring him, but she was not bound to establish the fact of the agents' knowledge of the boy's peril by their own admission. She might prove it over their denial if she could satisfy the jury of the fact by competent evidence. Evidence that a person was present and looking at an object would ordinarily be regarded as affording strong *prima facie* proof that he saw it.

None of the eyewitnesses of the accident other than Trump saw the boy before the engine was almost upon him, and their accounts of what happened when they did see him are neither clear nor uniform. The jury, to whom the case was sent by the learned Judge below, were the proper parties to estimate and pass upon the credibility of the conflicting witnesses as to what occurred while the engine was backing from the coal chute up to the place of the accident, as well as the weight of the whole testimony.

In *Consolidated Ry. Co.* v. *Armstrong*, 92 Md. 554, and many other cases there cited, where there was testimony tending to show that the defendant or its agents had an opportunity to discover a plaintiff's peril, by the exercise of reasonable care, in time to avert it, it was held that the jury should be instructed that the failure to exercise that care made the defendant liable for an injury resulting from such failure, even though the plaintiff's deceased had gotten into the situation of peril through his own negligence. But in *Armstrong's case* and most of the cases there cited the injured person was not a trespasser, but at the time of his injury was in a place where he had a right to be, such as a public street either where it crossed a railroad or where its bed was occupied by the tracks of the street railway.

The cases last referred to, when considered together with *Kehoe's case,* 83 Md. 434, and the line of cases hereinbefore referred to in connection with it, plainly show that the duty of those in charge of moving railway trains to keep a lookout for and exert care to avoid injuring persons at railway

crossings and on public highways where such persons have a
right to be and may be expected to be found, is entirely dif-
ferent from the care required of them in respect to the possi-
ble presence of trespassers on the railway tracks where, hav-
ing no right to be, they are not expected to be found.  We
have repeatedly held in the cases already referred to and
others, that those in charge of the trains have no duty to an-
ticipate that persons will unlawfully go upon the tracks, and
consequently the failure to guard in advance against the pos-
sible or probable results of such unexpected wrongful pres-
ence of persons on the tracks does not constitute negligence
on the part of the railroad company, whose liability to use
care to avoid injuring any person so trespassing on its prop-
erty begins only when their agents are made aware of his
presence and peril.

The defendant's fourth prayer in the form in which it was
offered, and its sixth and seventh prayers were defective in
holding that the duty of the defendant's agents to exercise
care to protect the plaintiff's deceased would begin only when
they *saw* him in a situation of peril instead of when they
became aware of his peril.  If Trump's testimony that the
boy was screaming and yelling from the time his foot was
caught in the switch was true, those in charge of the engine
might have been informed of his peril by hearing his cries of
distress.   The seventh prayer also is predicated in part upon
the assumption that those in charge of the engine did not
keep a lookout as it backed along the switch.   The engineer
and brakeman testified that they kept a constant lookout
ahead in the direction in which the engine was going.

The plaintiff's first prayer which defines her right of recov-
ery erroneously assumed that the evidence, if the jury be-
lieved it, touching the habit of persons to cross the tracks at
and near the location of the accident by which the boy was
injured, imposed upon the agents of the defendant the duty
of expecting the presence of persons on the tracks at that
place and the corresponding obligation of keeping a lookout

for them and exercising especial care for their protection.
That proposition is in conflict with the repeated decisions of
this Court in respect to the duty and responsibility of a rail-
road company to unauthorized persons who go upon its right
of way. *Price* v. *P., W. and B. Ry. Co., supra; B. and O.
Ry. Co.* v. *Allison, supra; Westn. Md. Ry.* v. *State, use of
Kehoe, supra; Ches. Beach. Ry. Co.* v. *Donahue, supra.*

The plaintiff's second prayer, stating the law as to the
measure of damages, was in the usual form and free from
objection.

For the error in granting the plaintiff's first prayer and
in the rulings on evidence mentioned in this opinion, the
judgment appealed from must be reversed and the case re-
manded for a new trial.

*Judgment reversed, with costs, and case
remanded for a new trial.*