## GEORGE GARVICK *vs.* THE UNITED RAILWAYS AND ELECTRIC COMPANY.

*Negligence—Walking on Track of Electric Railway—Knowledge of Danger—Failure to Give Signal.*

When a person walking on the track of an electric railway sees, or is told, that a car is approaching, in time to avoid injury, the failure of the motorman to sound the gong is not negligence as to such person.

When a man is seen walking on a track at a point where he can easily step aside, and sees or knows that a car is approaching, the motorman is justified in assuming that he will use his senses and get out of the way of danger.

Plaintiff, with two other men, was walking on the track of a suburban electric railway, when one of the men said, upon the approach of a car coming up hill in the same direction, "Look out! Here comes a car." The two men got off the track to the left and the plaintiff went to the right and was struck by the passing car. They testified that no gong was sounded as the car approached and that it was not going very fast. In an action to recover damages for the injury so occasioned, *held*, that there was no evidence of any negligence on the part of the defendant, and also that if there had been such evidence, the plaintiff was guilty of contributory negligence, because while walking in an obviously dangerous place he failed to keep a lookout for cars coming from behind, and also neglected to obey the timely warning given him by his companion.

Appeal from the Court of Common Pleas (DOBLER, J.)

The cause was argued before MCSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Thomas G. Hayes* (with whom was *John H. Walraven* on the brief), for the appellant.

1. The appellant in walking on that portion of the Falls road, a public street or highway, between the tracks of the street railway of the appellee in broad daylight, was not guilty of negligence. *Cooke* v. *Baltimore Traction Co.*, 80 Md. 551, 554; *Con. R. Co.* v. *Armstrong*, 92 Md. 554, 565; *Lake Roland* v. *McKewen*, 80 Md. 593, 602; *Boss* v. *Litton*, 5 Car. & P. 407; *Coombs* v. *Pennington*, 42 Md. 332; *Atlanta* v. *Buchanan*, 76 Ga. 585; *Stringer* v. *Frost* (Ind.), 2 L. R. A. 614; *Betton* v. *Baxter*, 54 N. Y. 245; *Colton* v. *Wood*, 8 C. B. N. S. 571; *Tanner* v. *Louisville, etc., R. Co.*, 60 Ala. 621.

2. It was on the unanswered and unexplained testimony of the appellant and his witnesses, under proper instructions, for the jury to decide whether the street railway was guilty of negligence, in running its car in broad daylight, without sounding its gong or giving other signals, over the appellant, who was unaware of its approach, and who was walking along a public highway, immediately in front of the car and in full view of the motorman and who was struck by the car and injured, while endeavoring to extricate himself from the peril caused by the negligence of the street railway. *Davis* v. *Mann*, 11 East. 60, 62 R. R. 698; *N. C. R. Co.* v. *Price*, 29 Md. 436; *B. & O. R. Co.* v. *Trainor*, 33 Md. 554; *Klipper* v. *Coffrey*, 44 Md. 494; *Kean* v. *B. & O. R. Co.*, 61 Md. 154; *Md. C. R. Co.* v. *Neuber*, 62 Md. 391; *Appel's case*, 80 Md. 593; *McKewen's case*, 80 Md. 603; *Cook's case*, 80 Md. 551; *Rifcowitz case*, 89 Md. 338; *Armstrong case*, 92 Md. 554; *Houston City Street R. Co.* v. *Woodlock* (Civ. T. App.) 29 S. W. 817; *Frazer* v. *South. etc., R. Co.*, 81 Ala. 185, 1 So. 85; *Palmer* v. *Northern P. R. Co.*, 37 Minn. 223, 33 N. W. 707; *Hill* v. *Missouri P. R. Co.*, 49 Mo. App. 520; *Chamberlaine* v. *Missouri P. R. Co.*, 133 Mo. 587, 34 S. W. 842; *Bogan* v. *Carolina, etc., R. Co.* (No. 6), 55 L. R. A. 418, notes; *McNabb's case*, 94 Md. 729.

3. The testimony of the appellant and his witnesses as to the physical facts and circumstances attending the accident,

unanswered and unexplained by any evidence on the part of the appellee, presented evidence from which the jury might infer, in the absence of explanation, under the maxim *res ipsa loquitur*, negligence on the part of the appellee, and it was error to take the case from the jury. *Benedick* v. *Potts*, 88 Md. 52, 55; *South Balto. Car Works* v. *Schaeffer*, 96 Md. 106; *Winkelman* v. *Colladay*, 88 Md. 91; *Griffin* v. *Boston, etc., Railroad*, 148 Mass. 143, 19 N. E. 160; *Rose's case*, 20 Blackford, 411; *Scott* v. *London Dock Co.*, 3 Hurlst & C. 596; *Moyshan* v. *Hills Co.*, 146 Mass. 596, 16 N. E. 574; *Custer* v. *Oliver Oil Co.* (S. C.) 13 S. E. 419; *Ocean S. S.* v. *Matthews*, 86 Ga. 418, 12 S. E. 632; *Goodman* v. *Richmond, etc., R. Co.*, 81 Va. 576; *Graham* v. *Badger*, 164 Mass. 42, 41, N. E. 61; *Hennessey* v. *Boston*, 161 Mass. 502, 37 N. E. 668; *Houston* v. *Brusch*, 66 Vt. 331, 29 A. 380; *Price* v. *Davis, Adm.*, 53 U. S. App. 291; *Guthrie* v. *Maine, etc., R. Co.*, 81 Me. 572, 18 A. 295.

*Geo. Dobbin Penniman* and *Arthur D. Foster* (with whom was *Reuben C. Foster* on the brief), for the appellee.

FOWLER, J., delivered the opinion of the Court.

This is an action to recover damages for the injury caused by the alleged negligence of the United Electric Railways of Baltimore City.

The Court below at the termination of the plaintiff's testimony withdrew the case from the jury and instructed them to find a verdict for the defendant. The judgment being against the plaintiff he has appealed, and the only question presented by the record is the propriety of the ruling above mentioned.

The facts, conceded, of course, by the defendant's demurrer to the evidence, are that the plaintiff, George Garvick, together with two companions, was walking along the southbound track of the defendant company—which are laid on the side of the Falls road. When they had nearly reached Cold Spring lane which is just outside or just within the city limits, a car came along going south in the same direction in which

they were walking. We give the plaintiff's testimony: "I am the plaintiff. Between five and six o'clock, July 23rd, 1903, on my way home from Roland Park, I was about at Cold Spring lane coming towards the city. As we were coming along, the car came along. We were on the track, and so *when a gentleman said "I believe there is a car coming,"* I started to get off the track, and *just as I got outside the track* it struck me in the back and knocked me down. Right here (Indicating over the left hip to the back.) At the place where the accident happened the tracks are on a level with the street. *When I stepped off the track I was standing up.* I don't know what part of the car struck me. I did not hear any bell at all. The warning spoken of came from Mr. McKinny. When he said the car was coming I tried to get off the track. I stepped to the right. Mr. McKinney stepped to the left. *Both of the gentlemen with me stepped to the left* and I went to the right.

### Cross-Examination.

It is not the fender that struck me, the fender wouldn't be up that high on my back; I don't know whether it was the foot-board or edge of the car, I couldn't say that. Just as soon as the car came along it struck me, and I don't know what part it was. *The fender must have passed me before the car struck me.* It was done so quick I don't know how it was done; *was no fender.* Just as I stepped across the railing the car hit me right in the back. I am not very hard of hearing. I can hear all right. * * * The other two men with me went to the left of the track; *we all started to get off together. The other men were not struck.* My hearing is not of the best. I may be a little deaf. I did not hear any gong rung. * * * *The place where the accident happened was an up-grade,* this side of Cold Spring lane; *I was walking up the hill* going the same way with the car. * * * I was in the track; I don't know about the other men. I was in the south-bound track. We were walking three abreast and talking as we went along. I think one of the two men were in the same track with me. I won't swear about the other."

John T. McKinny, one of the plaintiff's companions, testi-

fied as follows: "I knew Mr. Garvick from the time he was working at Roland Park; I was with him at the time of the accident; *we were coming up from Cold Spring lane coming south, up the grade towards* the city limits, and were all three walking along; I was walking in the middle and Mr. Stanbaugh *was on the right hand side*, and *Mr. Garvick on the left*, and we were talking and I looked back and said; Look out, there is a car coming, and Mr. Stanbaugh and I stepped to the left and Mr. Garvick to the right; I didn't see the car strike him, but I saw him getting up off the ground after the car passed; when I gave the warning I saw Mr. Garvick step over to the right; when he was struck *the car was between Mr. Garvick and me;* the car was not very far when I hollered; I just looked back and said: *Look out, a car is coming, and Mr. Stanbaugh and I stepped off, and Mr. Garvick he stepped to the other side; I don't think the car was coming fast;* I can't say what gait—as they generally come up grade; I can't say the car was coming fast or slow either; I can't tell whether Mr. Garvick stepped fast or slow, as he stepped off the track, because I was getting out the way myself; the tracks where the accident occurred are about even with the street; when I first saw Mr. Garvick after the car passed, he was on his hands and knees getting up; I can't say positively how far the car was from us when we attempted to get off the track; the car was further than that door of this room, when I hollered; I don't wait long for a car to get that close to me before I try to get out of the way, if I see it; *Mr. Garvick stepped off the same as I did, only on the opposite side.* Q. State his manner of getting off the track? A. That is a question I don't see how I can answer; I couldn't tell whether he stepped fast or slow, because I was getting out of the way myself. Q. At what speed were you moving to get out of the way? A. I wasn't going very fast, but I was going fast enough to get out of the way.

### Cross-Examination.

I went with Garvick a part of the way home after the accident. I walked with him about one-eighth of a mile. *I*

*was in the center of the south-bound track and Mr. Garvick was to my right. I got out of the way all right."*

Calvin Stanbaugh, plaintiff's remaining companion, testified thus: "I live at 507 Hickory avenue, in Woodberry; I heard the testimony of Mr. Garvick; we were all coming home that evening, walking down the track, and I was walking on the north-bound track coming down, and Mr. McKinny and Mr. Garvick were in the south-bound track, and *I heard some one say, look out, here comes a car,* and as the car passed by I saw Mr. Garvick getting up, but what part of the car struck him I couldn't say; *I don't think the car was coming fast,* it was up grade; Mr. Garvick said he was hurt right smart; when I saw Mr. Garvick getting up, I don't suppose the car was over ten yards at the outside; I didn't pay much attention, but I know the car stopped; if the bell of the car rang, I didn't hear it, because we were walking along talking; the tracks where the accident happened were about even with the street."

It thus appears that the plaintiff and one of his companions were walking south *along* not across the defendants south-bound track and that the other member of the party was walking in the same direction along the north-bound track. The two questions presented by the state of facts disclosed by the record, are first, does the plaintiff's testimony afford any legally sufficient evidence of negligence on the part of the defendant or its servant, the motorman, and secondly, even assuming there was such evidence, was the plaintiff guilty of such contributory negligence as, under all the circumstances of the case, will prevent a recovery.

(I) Was the defendant or its motorman guilty of negligence? Before this question can be answered in the affirmative it is incumbent on the plaintiff to adduce some definite affirmative proof. Negligence of the defendant cannot, in a case like this, be inferred from the mere happening of the accident. It has been repeatedly held by this Court that the negligence of a defendant will not be presumed, nor will a surmise or a scintilla of evidence that there may have been negligence on his part justify a Court in sending a case to the jury. There

must be some reasonable evidence of *well defined* acts of negligence or breach of duty on the part of the defendant, causing the injury complained of. *Fletcher* v. *United Railways*, 95 Md. 563. We have failed to find any such evidence in the record now before us. If there was any culpable negligence which will render the defendant liable it must be the negligence or the motorman. It is contended on the part of the plaintiff that the motorman was (*a*) guilty of negligence because he failed to ring the gong and (*b*) because he was running the car recklessly at a high rate of speed. Assuming that the negative evidence given by the witnesses that they did not hear the gong ring would be ordinarily legally sufficient evidence tending to prove the negligence of the defendant, yet in this case such negative proof can have no probative force because it is established beyond controversy by the plaintiff's testimony that he had notice from his companion that the car was coming. "The purpose of sounding gongs on street cars is to notify persons on or about to cross the track that the car is approaching, so that they may govern their actions with safety. Where, however, the pedestrian sees the car and knows of its approach, every purpose of the rule for sounding the gong has been fulfilled. The failure, therefore, of the motorman to sound the gong, is not negligence to *such pedestrian*, if the latter sees *or knows* of the proximity and approach of the car." *Murray* v. *Transfer Co.*, 75 S. W. R. 613; *Louisville R. R.* v. *Colston*, 79 S. W. R. 244. That the plaintiff in this case knew of the approach of the car is beyond question, for his companion, McKinny, so informed him. Not only so, but McKinny had time to impart to the plaintiff this information and retire to a place of safety.

(*b*) The second ground to show negligence on the part of the defendant is the alleged high rate of speed at which the car was running. The evidence affords no foundation for this contention. No witness testified the car was running at an illegal rate of speed, but on the contrary both of the plaintiff's companions declared that the car was coming up grade and was not coming fast.

(*c*) But in addition to this evidence it is settled, in this State, at least, and generally, that where a party is discovered on the track of a railroad in the full power of locomotion and no impediment to his escape, those on the train may well act upon the assumption that he will use his senses for his protection and get out of the way of danger before he is struck. *State, use Schroeder* v. *B. & O. Rd. Co.*, 69 Md. 558; *State, use of Savington* v. *B. & O. Rd.*, 71 Md. 595; *Egner* v. *United Ry.*, 98 Md. 400. Hence we think it is clear that the defendant's motorman had a right to presume that the plaintiff and his companions would leave the track for a place of safety especially as they knew the car was coming. The evidence shows they were notified of the approach of the car by one of their number; but, even in the absence of the evidence of such affirmative proof of notice it seems incredible that the noise of the car would not of itself have afforded sufficient notice of its approach to persons of ordinary powers of hearing who were walking on the tracks in the country free from the noise of the city. We think, therefore, that there is no legally sufficient evidence to be found in the record of negligence on the part of the defendant.

(II) But assuming *ex gratia* that the defendant was guilty of negligence, the record affords abundant evidence of the contributory negligence of the plaintiff.

In the first place, if it be conceded that the plaintiff was legally on the defendant's tracks we do not think the cases cited by his counsel to sustain that proposition are at all applicable to the facts of this case. *Cook* v. *Balt. Trac. Co.*, 80 Md. 554; *Lake Roland Co.* v. *McKewen*, 80 Md. 602, and *Con. R. Co.* v. *Armstrong*, 92 Md. 565, are all cases in which the injury complained of was inflicted at crossings. In none of them was the injured person walking *along* as distinguished from across the tracks. If the plaintiff voluntarily selected the most dangerous place on the road to walk, it was unquestionably his duty to use at least ordinary care to avoid being injured. He must have known that at any moment a car might approach from behind, and, therefore, it was his duty to

use his senses of hearing and sight for his protection.    It does not appear, however, that he at any time looked back or that he heard the car approaching until informed by his companion McKinny, who says in his testimony "Garvick stepped off the same as I did, only on the opposite side.    I was not going very fast, but I was going fast enough to get out of the way." It would seem to be clear from the testimony that the plaintiff not only failed to use his eyes or his ears, but neglected to avail himself of the timely warning given by McKinny.

It follows therefore, that the judgment appealed from will be affirmed.

*Judgment affirmed.*

(Decided June 20th, 1905.)