## THE CHESAPEAKE BEACH RAILWAY COMPANY vs. THOMAS DONAHUE.

*Negligence—Injury to Trespasser Walking on Railway Track—Evidence—Contradicting Witness.*

Plaintiff was walking on the main track of the defendant railway company near a station in the country, where he was a trespasser, on a dark night, when he was struck by a train coming from behind and one of his feet was cut off. He lived in the neighborhood, was well acquainted with the locality and knew that a train was due to pass at about that time. If he had looked behind him he could have seen or heard the approaching train. He had been previously warned by an officer of the defendant company to keep off the tracks. The evidence was con-

flicting as to whether a bell or whistle was sounded as the train approached.   There was testimony that the plaintiff had been more or less under the influence of liquor on the day in question.   There was no evidence that those in charge of the engine saw the plaintiff's peril in time to avoid the accident.   In an action to recover damages for such injury, *held*, that the jury should be instructed that the plaintiff is not entitled to recover.

Mere acquiesence by a railway company in the occasional use of its track as a foot-path by residents in the vicinity does not impose on the company any duty to guard against accidents to such persons greater than its duty in that respect towards other trespassers.

The fact that a railway train did not comply with the provisions of the statute relating to its stopping at the station for the convenience of passengers is not material when the question is whether an injury to a trespasser walking on the track near such station and struck by the train, was caused by the railway company's negligence or not.

A witness may be asked whether he had made a certain statement to third parties for the purpose of contradicting him by evidence that he did make such statement and thus impeach his credit.   But the testimony contradicting the witness is not evidence to show that the statement made by him was true.

*Decided January 7th, 1908.*

Appeal from the Circuit Court for Prince George's County (MERRICK, J.), where there was a judgment for the plaintiff for $6,000.

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ,

*F. D. McKenney* and *Wm. Hitz* (with whom were *C. C. Magruder* and *J. S. Flannery* on the brief), for the appellant.

*R. H. McNeill* and *Geo. B. Merrick*, for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellee, Thomas Donahue, while walking along the railroad track of the appellant company in Prince George's County was struck and injured by one of its trains.   He sued the company in the Circuit Court of that county for damages resulting from his injury, and recovered the judgment from which the present appeal was taken.

The record contains eleven bills of exceptions of which eight relate to rulings on the admissibility of evidence, two to the Court's action on the prayers and one to its refusal to grant a motion in the nature of a prayer asking the case be taken from the jury for want of legally sufficient evidence to justify a verdict for the plaintiff. The record in the case is unduly voluminous containing not only all of the testimony taken in the case, instead of so much only of it as is necessary to explain the bearing of the rulings upon the issues and questions involved, but also a full report of an almost continuous colloquy which ensued between the opposing counsel or between them and the trial Judge, during the week or more consumed in the trial below. It is stated in the appellant's brief that exception was taken by the defendant to some of the remarks made by the trial Judge to the jury when the case was given to them, but; as no bill of exceptions founded thereon appears in the record, the question of the propriety of the remarks is not presented for our consideration.

It appears from the evidence that the appellant company owns and operates a steam railroad, extending from the District of Columbia through Prince George's and Calvert Counties to Chesapeake Beach. The operating yards of the road extend from the District line about three-quarters of a mile to a point in Prince George's County known as Seat Pleasant, where a round-house, water tank and other operating structures are located. The appellee, Donahue, is a truck farmer, about thirty years old, who has resided all of his life in the vicinity of Seat Pleasant, and was quite familiar with the *locus in quo* of the accident at the time of its occurrence. On November 22nd, 1905, after spending the day in Washington, he started at about six o'clock in the evening to walk on the main track of the defendant's railroad from the District line to his home. The night was a dark one with no moon shining. When he had reached a point nearly abreast of the round-house a regular daily passenger train coming from Washington about fifteen minutes behind its schedule time, at a speed of from 20 to 25 miles an hour, overtook him from

behind and struck him and cut off one of his feet.    The accident occurred on a slight curve in the  track, but beyond the. curve looking toward  Washington  the track ran almost in a straight line for 500 yards.   A number of empty passenger cars were standing on a side track near the round-house; but not in such a position as to intercept the view of the place of the accident to one coming down the track from Washington.

There is evidence in the record tending to show that many persons had been in the habit of walking from the District line to their homes over this part of the railroad track ever since its construction in 1899, and that, although there was no depot building or platform there, Seat Pleasant appeared among the names of the stations upon the time tables of the appellant and its passenger trains occasionally stopped there to take on or let off passengers, and that the trains were accustomed to ring a bell and blow a whistle as they approached the place.    There is also evidence tending to show that pedestrians were in the habit of crossing the railroad tracks at a place quite near the locality of the accident and that there was a board there across the ditch running along the side of track.    There is also evidence tending to show that Donahue had been seen very many times on the company's tracks by its superintendent and had been warned by him on different occasions to keep off of them.

The plaintiff put in evidence at the trial sec. 26 of Art. 23 of the Code of Public General Laws, which requires all railway trains to entirely stop for one-half a minute at each station advertised by the railroad company as one for receiving passengers upon such train, and imposes a penalty for a failure to comply with its provisions.

Donahue as a witness on his own behalf gave the following account of the accident.    "The train struck me just as I was coming to the board.    There was a board on the side where the people walk.    They get off and they start to walk up on the side of the track next to Mr. Lacey's place.    Before I got to this board the engine struck me.    I heard the rattle of it behind me, about four or five yards behind me, and I saw the

light flash in front of me. Some one in the cab of the engine —I judge it was in the cab of the engine hollered to me when the engine was on top of me to get out of the way. At that time I jumped across the track as quick as I could and I hung my foot and the engine went over it." In the following extract from his cross examination he gives further details of the occurrence.

"Q. Mr. Donahue, you say that somebody called to you from this cab?

"A. Yes, sir.

"Q. When?

"A. It was from the cab. The sound came from the cab.

"Q. Where were you then?

"A. Where were I?

"Q. Yes.

"A. On the track going home, near the place where I was struck.

"Q. When did you first hear the train?

"A. When it was about four or five yards from me, I saw the light flash in front of me, and heard the rattle behind me. In the meantime some one hollered to me from the cab of the engine.

"Q. Was the first intimation you had that this train was there gotten from this call to you? Was that the first you knew of it?

"A. Yes, sir. When I heard the rattle of it behind me, and saw the light flash in front of me, at that time I jumped off the track as quick as I could, and some one in the cab of the engine hollered to me to get out of the way.

"Q. Where were you when you first heard the rattle?

"A. Right near the place where I was struck.

"Q. How near?

"A. I could n't give the whole space. When I heard the rattle of it I got off as quick as I could. It was right at the place, I might say.

"Q. How long was it after you heard the rattle before you heard this call?

"A. Right at the same time. At the time I threw myself off the track I heard some one up in the cab of the engine—I judge it was the cab of the engine; the sound came from there —to get out of the way.

"Q. You say you can stay at your house and hear the whistle blow at Marlboro?

"A. I judge it was at Marlboro, from the time it runs to my house.

"Q. Can you stay at your house and hear the engine puff at the District line?

"A. Yes, sir; I judge about that. Sometimes it starts out with a puff."

Donahue also testified that when the accident happened he was not intoxicated, but had full possession of his senses and would have gotten off the track if he had heard the train in time. He further stated in his testimony that no whistle was blown nor bell rung from the engine before it struck him. Several other witnesses who were near the scene of the accident testified that they heard neither bell nor whistle from the approaching train, although they felt sure they would have heard them if they had been sounded. On the contrary the engineer and fireman of the train both testified that the bell was rung and the whistle blown in the usual manner on approaching Seat Pleasant on that evening. Love Williams and Garner Randall, two acquaintances of Donahue, who also resided near Seat Pleasant, testified for the plaintiff that they were walking home together from the District line on the railroad track about 75 yards behind him on the evening of the accident. They both heard the train running and puffing behind them and one of them heard the engine bell ringing, and they stepped from the track and allowed it to pass them. They heard Donahue's cries when he was injured and hastened to his relief. Randall said that Donahue when they came up to him did not talk like a drunken man. Williams said that Donahue had been drinking but he could not "tell just whether he was sober or not," he had sense enough to tell Williams what to do. Witness further said that when he came up to Donahue there was a bottle of whiskey "setting there" and he asked Donahue what he was doing with a bottle there and Donahue replied "Love take it away and drink it or break it to pieces or do what you chose with it—I don't want it any more as long as I live." Donahue himself testified that he had not taken more than two drinks, one of whiskey and one of beer, during the day and further said that the bot-

tle of whiskey which he gave to Love Williams after the accident had not been opened, but each one of the three other witnesses testified to having seen Donahue drunk in Washington between four and five o'clock on the afternoon of the day on which he was injured.

It is apparent from the testimony to which we have adverted, coming from the plaintiff's own witnesses, that on the night on which he was injured he deliberately started to walk for the distance of nearly a mile on the main track of the railroad at a time when he must from his familiarity with the situation have known that a train was about due without first ascertaining whether the train had in fact passed by. He continued to walk upon the track until he had almost completed his intended journey without, so far as the record shows, observing any precautions to protect himself from approaching trains, although an occasional turning round and looking and listening would have revealed to him the sound of the coming train or the glare of its headlight in time to save himself from harm. Furthermore he thus went and remained upon the track, whose rails were a constant signal of danger to him, for his own convenience and not for the purpose of any business with the railroad company. Under the well settled law of this State such conduct constitutes negligence *per se*, and if a person while so acting is injured by a passing train he will be presumed to have contributed to the occurence of the accident and unless that presumption be overcome he cannot recover for the injury. This is especially true where the injured party is, as in the present case, a deliberate trespasser upon the railroad tracks when injured.

In *State, use of Bacon* v. *Balto. & Pot. R. R. Co.*, 58 Md. 482, the suit was instituted to recover damages for the killing by a railroad train of a man who was walking upon the track at night. In that case as in the one before us the man had lived for several years near the track and was familiar with the running of the trains, and the train which killed him was a regular passenger train running a little late. In the opinion in that case this Court, speaking through the late CHIEF JUDGE

ALVEY, said: "Repeating here substantially what has been said and held in previous cases, the deceased was at the time of the accident on the private right of way of the defendant, where he had no right to be. But, aside from this fact, the failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking proper precautions for his own safety. Negligence of the defendant's employees in these particulars was no excuse for negligence on his part. He was bound to listen and to look while walking along the railroad track, in order to avoid an approaching train, and not to walk carelessly into a place of possible danger. Had he used his senses, he could not have failed both to hear and to see the train which was approaching; and having failed to observe the proper precautions, there is no right of action against the defendant for the consequences of the accident. *N. C. R. Co.* v. *Burns*, 54 Md. 113; *B. & P. R. Co.* v. *Stansbury*, Id. 648; *Railroad Co.*, v. *Houston*, 95 U. S. 702."

Again in *Westn. Md. R. R. Co.* v. *State, use of Kehoe*, 83 Md. 434, where the plaintiff, who had been drinking freely, attempted to cross the railroad tracks at night, near to but not upon a public crossing and was run over by a moving car and had one of his legs cut off, this Court in reversing the judg-ment of the lower Court said, speaking through the late CHIEF JUDGE MCSHERRY, "As no one has a right to be negligently or wrongfully on a railroad track, the company owes no duty to a person so situated to anticipate that he will be in such a position; but if its servants see him in a place of peril, though he be wrongfully or negligently there, then the duty arises to avoid injuring him if possible. The duty which the company owes to such person originates only when the perilous position is seen or known by the company's servants. When, therefore, a plaintiff is wrongfully or negligently on the tracks of a railroad in a position of peril, as the prayer we are considering assumes was the fact in the case at bar, the duty of the company to use due care to avoid injuring him arises at the moment the servants of the company see and

become aware of his peril; and hence, to sustain this branch of the prayer, it was essential for him to show, first, that the company's servants had knowledge of his peril; secondly, that they had that knowledge in time to arrest an injury; and, third, that they failed to exert proper care to avoid the injury after acquiring knowledge of the peril.  Until the employees are made aware of the peril arising from an act of negligence on the part of the plaintiff, they are under no obligation to assume that he will be negligent or will be in a dangerous place which he has no right to occupy; and consequently they owe him no duty to anticipate that he will be where he ought not to be, or to guard in advance against the possible or even probable results of his unknown wrongful occupancy of the tracks; and as they owe him no such duty, their failure to perform it is not an act of negligence on the part of the company."

And in the more recent case of *Garvick* v. *United Railways Co.*, 101 Md. 246, we said: "It is settled, in this State at least, and generally, that where a party is discovered on a track of a railroad in the full power of locomotion and no impediment to his escape, those on the train may well act on the assumption that he will use his senses for his protection and get out of the way of danger before he is struck.   *State, use of Schroeder* v. *B. & O. R. R. Co.*, 69 Md. 558; *State, use of Savington* v. *B. & O. R. R. Co.*, 71 Md. 595; *Enger* v. *United Rys.*, 98 Md. 400."

The appellee would not have been relieved from the results of his own negligence if the jury had found from the evidence that there was a public crossing and a railway station within a few yards of the place where he was injured; for even if he had a right to be upon the tracks in the act of crossing the railway or going to its station he had no right to use them for the totally different purpose of walking along them with no intention of embarking on a train as he was doing when he was injured.   For the same reason he is not entitled to invoke in extenuation of his own negligence the failure of the company, if any such there were, to comply with the provisions of sec. 26

of Art. 23 of the Code, relating to the stoppage of railway trains at stations for the purpose of taking on passengers.

The record does not furnish any legally sufficient evidence from which the jury could have found that those in charge of the train or its engine were made aware of the peril of the plaintiff in time to have saved him from injury by the exercise of reasonable care.  It results from what we said in *Garvick's case, supra*, that if he had been discovered on the track in the full power of locomotion and no impediment to his escape those on the train might well have acted on the assumption that he would use his senses for his own protection and get out of the way in time to save himself from harm.  Nor did the mere passive acquiescence, if such there were, of the appellant in the occasional use of its track as a foot path by persons returning from the District line to their home in Prince George's County create a new duty or impose additional obligation on its part to provide against the danger of accident. *Godfrey* v. *R. R. Co.*, 71 Ills. 500, and cases there cited.

Both the engineer and fireman in charge of the engine positively denied that they had any knowledge of his presence on the track until they learned of the accident after its occurrence. The plaintiff's counsel at the trial of the case were permitted to ask the fireman, for the purpose of contradicting him and discrediting his testimony, whether he had not, six months or more after the date of the accident, told two persons that on the night of the accident the engineer was drunk and that he, the witness, was the man that hollered to the plaintiff that night.  The fireman positively denied that he had made any such statements.  One of the parties to whom the statement was alleged to have been made was afterwards put upon the stand and testified that the fireman had in fact made the statement to him.  The plaintiffs' counsel were entitled to put the question to the fireman when he was on the stand for the purpose of contradicting him and to introduce the contradicting testimony and the jury were entitled to consider that testimony in determining the degree of credit to be accorded the fireman's evidence but they were not entitled to consider it as ev-

idence to prove the truth of the contents of the statement. Such evidence "is to be received and considered by the jury alone as rebutting and contradicting evidence to discredit the witness." "Were it otherwise the result would be the admissibility in an indirect way of often the loosest and most unreliable hearsay." *Mason* v. *Poulson*, 43 Md. 176; *Stirling* v. *Stirling*, 64 Md. 148. The plaintiff's own testimony that some one in the cab "hollered" to him when the engine was on top of him to get out of the way does not tend to prove that he was seen from the engine in time for its crew in the exercise of reasonable care to have prevented his injury, but rather tends to prove that he was seen too late for that purpose.

For the reasons which we have mentioned we are of the opinion that the learned Judge below should have granted the defendant's first prayer which asserted that there was no evidence in the case legally sufficient to entitle the plaintiff to recover and that the verdict of the jury should be for the defendant, and for his error in rejecting that prayer the judgment appealed from must be reversed. As we have determined that the plaintiff was not entitled to recover and will therefore not remand the case, we deem it unnecessary to review the Court's action upon the other prayers, or upon the other exceptions taken by the defendant to the rulings upon the admissibility of evidence.

> *Judgment reversed with costs, without awarding a new trial.*