859 F.2d 150
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Barbara SUSEMIHL, John Luther Susemihl, Jr., Plaintiffs-Appellants,
v.
UNITED STEAMSHIP COMPANY (BAHAMAS) LTD., d/b/a Scandinavian
World Cruises, Scandinavian World Cruises
(Bahamas) Ltd, Trans America Services,
Ltd, Defendants-Appellees,
and
Poseidon Services, Ltd, Defendant.
 No. 87-3068.
 United States Court of Appeals, Fourth Circuit.
 Argued May 4, 1988.
Decided Sept. 19, 1988.
 
 Robert J. Weltchek (Dean Kasian, Goldstein, Weltchek & Associates on brief) for appellants.
 John H. West, III (Pamela J. White, Ober, Kaler, Grimes & Shriver on brief) for appellees.
 Before HARRISON L. WINTER, Chief Judge, and SPROUSE, Circuit Judge, and NORMAN P. RAMSEY, United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Barbara Susemihl appeals the judgment of the district court entered on a jury verdict in favor of United Steamship Company (Bahamas), Ltd., (U.S.C.) in Susemihl's action seeking damages for injuries resulting from her fall while aboard U.S.C.'s ship, the M/S SCANDINAVIA. Susemihl was aboard the ship as a fee-paying passenger on a luxury cruise. She fell while crossing a tile-covered service area in the ship's otherwise carpeted dining room. Susemihl contended at trial that the tile was inherently slippery and unreasonably dangerous for use in the service area adjacent to the dining room. On appeal, Susemihl raises two allegations of error. First, she argues the trial court erred in allowing a brochure published by the tile's manufacturer to be admitted into evidence. Second, she complains that the trial court's jury instructions inaccurately described the degree of care owed by a shipowner to a passenger. Finding no reversible error, we affirm.
 
 I.
 
 2
 Susemihl's first complaint is to the admission into evidence of an advertising brochure published by the manufacturer of the tile used on the ship. The first reference to the brochure occurred during U.S.C.'s cross-examination of Susemihl's expert, Dr. Robert B. Sleight. Sleight, a human factors engineer, had testified on direct examination concerning the slipperiness of the tile and the reasonableness of its use in the ship's dining area. He had stated that his initial investigation was conducted by examining photographs of the floor where Susemihl fell and that he later conducted tests of a sample of the tile to determine its "coefficient of friction." He had stated further that he found the tile unreasonably dangerous because of its slipperiness. During the course of his direct testimony, Sleight had described the tile used on the ship's floor as a "type ... you have probably seen in various places" and as a "type ... that is used in a good many applications."
 
 
 3
 On cross-examination of Sleight, U.S.C.'s counsel elicited testimony that Sleight had made a prediction of slipperiness and had predicted a coefficient of friction for the tile based on the photographs alone before he had been able to check the prediction against his tests of the tile samples. She showed Sleight a brochure containing illustrations of various types of tile used in numerous different settings, and Sleight identified it as the brochure of the manufacturer of the tile used on the ship. U.S.C.'s counsel then asked Sleight to identify any illustrations in the brochure showing tile of the type used on the ship. Sleight examined the brochure with a magnifying glass and picked out four illustrations that he stated showed "similar flooring material" to that used on the ship.
 
 
 4
 At the close of U.S.C.'s case, it asked that the brochure be admitted into evidence, and the trial court admitted the brochure over Susemihl's objection. During closing argument, U.S.C.'s counsel pointed out that Sleight had identified pictures in the brochure that showed the type of tile used in the ship being used in other locations, including a restaurant setting. U.S.C.'s counsel argued:
 
 
 5
 We took a product, a brand new ship,--this product is used in other restaurants, in other businesses, and that was on our ship. And I submit to you that this was a reasonable course for us to take. We are taking something that is used in the trade, well recognized, and it's on our floor.
 
 
 6
 Susemihl contends the brochure's admission was error because the brochure was irrelevant and contained inadmissible hearsay. Sleight testified, however, that visual inspection of the photographs was a method he used in evaluating the slipperiness of the tile. He also testified that the tile depicted by the photographs in the brochure contained "similar flooring material," and that it was of a type "used in a good many applications" and which "you have probably seen in various places."
 
 
 7
 Under these circumstances the brochure was relevant to illustrate and impeach Sleight's methods as well as his conclusion that the tile was unreasonably slippery. The brochure also related to Sleight's testimony that the tile was used in a variety of settings and, therefore, to create the inference that its use on the ship was reasonable.
 
 
 8
 Similarly, we find no merit in Susemihl's contention that the brochure was inadmissible because it contained a hearsay assertion by the manufacturer that the tile was appropriate for use in restaurants. The brochure was not introduced to prove that the tile was safe for use in restaurants, but to show that the manufacturer's brochure offered the tile for use in a variety of settings and to illustrate and impeach Sleight's methodology. Out of court statements offered to show the fact that they were made rather than the truth of the matter stated are not hearsay. Fed.R.Evid. 801(c).
 
 
 9
 Moreover, the brochure was a published commercial compilation generally relied on by potential purchasers of the manufacturer's products. It was properly identified by Sleight and there is no question concerning its authenticity. To the extent it was used to show that the tile was "used in a good many applications," it was properly admitted under Fed.R.Evid. 803(17). See United States v. Grossman, 614 F.2d 295, 297 (1st Cir.1980) (manufacturer's catalogue admissible under Rule 803(17) to allow jury to identify stolen merchandise by comparison to merchandise pictured in catalogue).[1]
 
 II.
 
 10
 Susemihl also objects to the trial court's jury instruction concerning the applicable standard of care, claiming it set forth an improper standard lower than that required of the owner of a passenger ship. The trial court gave the following instruction:
 
 
 11
 As a general rule, a vessel engaged as a common carrier of passengers must exercise a degree of care in taking a passenger on board, carrying him to the port of destination and landing him safely as the means employed and the circumstances of the case will permit, but the vessel is not an insurer of the safety of its passengers.
 
 
 12
 This instruction is a modified version of one of Susemihl's proposed instructions. The proposed instruction was identical except for one phrase which read, "must exercise as high a degree of care...." (emphasis added). The trial judge omitted the words "as high" in response to an objection by U.S.C. and after hearing oral argument from both parties.
 
 
 13
 In addition to the instruction challenged here, the trial judge, over U.S.C.'s objection, gave Susemihl's other requested instructions concerning the standard of care:
 
 
 14
 The vessel's duty to exercise care for the safety of passengers involves the duty of warning passengers of danger which the ship's employees might reasonably anticipate and which are not readily apparent to passengers.
 
 
 15
 .............................................................
 
 
 16
 ...................
 
 
 17
 * * *
 
 
 18
 The defendant owes his passengers the duty to exercise reasonable care in light of all the circumstances. The degree of care that constitutes reasonable care under all of the circumstances will increase to the extent that the dangers of maritime travel are more hazardous than those in ordinary life.
 
 
 19
 Susemihl argues the jury instructions were erroneous because they failed to require the jury to apply the high standard of care ship owners have traditionally been required to exercise towards fee paying passengers. See Ortiz v. Greyhound Corp., 275 F.2d 770, 773 (4th Cir.1960). U.S.C. contends, however, that the trial court's instruction properly stated the applicable standard of care--"reasonable care"--which it claims was established as the standard by the Supreme Court in Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 632 (1959).
 
 
 20
 It is unnecessary for us to reach the merits of this controversy. An erroneous jury instruction is not grounds for reversal where it does not " 'affect the substantial rights of the parties.' " Rosebud Sioux Tribe v. A & P Steel, Inc., 733 F.2d 509, 517 (8th Cir.), cert. denied, 469 U.S. 1072 (1984) (quoting Fed.R.Civ.P. 61). Whether the error affects such rights is judged from "the record as a whole including the allegations of the complaint, the evidence, and the remaining instructions." Id. (citing Hallberg v. Brasher, 679 F.2d 751, 758 (8th Cir.1982)). While we do not recommend the trial court's instructions as a model for future cases, viewing the challenged omission in the light of the evidence and reading the jury instructions given as a whole, we find the modification of the requested instruction resulted in no prejudice.
 
 
 21
 Accordingly, the judgment of the district court is affirmed.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 To the extent Susemihl's objection goes to U.S.C.'s comments on the brochure during closing argument, we note that she failed to object to those comments in the trial court