# THE NORTHERN CENTRAL RY. CO. *vs.* GEORGE McMAHON.

*Contributory Negligence—Accident at Railway Crossing.*

The plaintiff's own evidence in an action charging the defendant with negligence showed that, walking alongside of his wagon he approached a railway crossing in broad daylight; that beginning at a point nineteen feet from the tracks, the view of approaching trains was unobstructed for a distance of five hundred feet; that he looked but did not see the train which struck his wagon till his horse's front feet were over the first rail, when he hastened forward and himself cleared the tracks but his wagon was demolished by the train. *Held*, that since the plaintiff could easily have seen the approaching train in time to stop and avoid the accident, the injury was occasioned by his own negligence.

*Held* further, that there is no evidence in the case that the defendant's agents saw the plaintiff on the track in time to avoid the collision.

Appeal from the Circuit Court for Harford County, (WAT-TERS, J.), where there was a verdict and judgment for the plaintiff for $1,000.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD and SCHMUCKER, JJ.

*Charles H. Carter* (with whom was *Thomas H. Robinson* on the brief), for the appellant.

*John S. Ensor* and *S. A. Williams;* for the appellee.

PAGE, J., delivered the opinion of the Court.

At the trial of this cause the appellant offered four prayers of which two were granted and two rejected. The only questions arising upon this record are those presented by the rulings of the Court in rejecting the third and fourth. By the third prayer, the Court was asked to instruct the jury that there was no evidence from which they could find that any of the employees of the defendant saw the plaintiff in time to avoid the collision; and by the fourth, that from the uncontradicted evidence in the cause the plaintiff directly contributed by his own negligence to the injuries complained of.

The facts of the case are substantially as follows: The accident happened on the defendant's road, at the crossing of the Ruxton road, (a public road,) over the tracks of the defendant at Rockland Station. The plaintiff, a young man of twenty-five years of age and familiar with the railroad at that point, started on that morning with a horse and cart from his father's house to Mr. Fisher's, at Ruxton. To reach that point his route took him along the Falls road until he reached the Ruxton road, thence along that road about forty or fifty feet to the track. The railroad at the crossing of that road runs nearly north and south, the direction of Baltimore being to the south. A siding, starting three hundred and ninety-eight feet southerly from the crossing, runs nearly parallel to

the main track between it and the Falls road.    The whistling post is 1200 feet from the crossing.    In approaching the track from the Falls road along and over the Ruxton road, at the point of intersection of these two roads, the plaintiff had an unobstructed view southerly along the track for more than 400 feet; as he came nearer to the track his view was intercepted by a freight car that stood upon the siding; after passing that there was a space of twelve feet between the car and the station house, where he could see down the track for about four hundred feet.    Then the station house obstructed his vision until he came within nineteen feet of the track, and from that point until he reached the track there was nothing to obstruct his view for a distance of about five hundred feet.    The day was cold and clear, the wind was high and made some noise and his cart "made a racket;" it had no washers.    He walked on the left or near side of his horse but was tall enough to see over it.    In giving his account of the accident, he said that after turning into the Ruxton road he "walked along carefully," he "took a careful look," he saw no engine and heard no signal.    He controlled his horse by the lines in his hands.    "As I drawed close I came almost to a standstill.    I did not stop, but held my horse up, and couldn't see no train approaching, and then urged my horse along.    As I drawed to the track, and my horse had his front feet over the first rail, I seen this train approaching, and there was no stopping, and the only thing to do was to go ahead.    I then clucked to my horse and struck him with the line.    In the meantime the horse made a sudden jump and cleared his hind-feet and me from the track and by that time the car about struck the cart and demolished it clean up the track."

From this statement, it is clear the train must have reached the crossing in an exceedingly short period of time after the feet of the horse were over the rail, and it had then been in full view of a person within nineteen feet of the track for five hundred feet.    If the speed of the train were much more rapid than that testified to by any witness in the case it must also have been within the vision of the plaintiff all the time

after he had passed the station house until his horse reached the track. Why did he not become aware of its approach and stop before he reached a place of danger? He could not have looked and he certainly did not stop until, to use his own words, he "drawed to the track." He testified, "the horse and I *both* looked when we approached the track;" and on being asked, "when you looked your horse was just on the first rail with his front feet?" he replied, "may be a little over but very close to the rail." There is evidence that between the car and the station he "took a careful look." The plaintiff testified to this, though the witness Pierce in his testimony states that it was in "making the turn from the Falls road into the Ruxton road," that the plaintiff "came almost to a standstill and looked over his horse towards Baltimore." This witness also stated that he "judged his position was 18 or 20 feet from the track," "the station *being nearer.*" The point therefore where he looked was definitely fixed by the witness as being at the Falls road, and at a place not as near to the track as the station, that is not at a point after he had passed the station and therefore not within twenty feet of the track, as the witness judged it was. This is the substance of all the evidence on this point, and it does not leave it open to question that the plaintiff, after he had passed the station and reached a position of perfect safety from whence his view down the track was unobstructed for five hundred feet, did not look until his horse was actually on the track. That he failed to observe the approach of the train was due solely to his want of proper care. If he had looked he could have seen the engine in ample time to avoid the accident. This case is therefore within the principle laid down in *Helm's case*, 84 Md. 525, where it was held that where the "circumstances are such that one with normal sight and hearing could see and hear, then his duty requires him to use his senses to guard against injury by the negligence of others." There is no evidence that he looked after he passed the station house except after it was too late to avoid the accident, but if there had been such evidence that he did so look but saw nothing, it would

have been, in view of all the circumstances of the case, " un-
worthy of consideration and should not have been submitted
to the jury." *Medairy's case,* 86 Md. 174.

But it is also contended that the appellant failed to use due
care to avoid the accident, and that there was evidence legally
sufficient to enable the jury to so find.   In *Kehoe's case,* 83
Md. 452, it was held that to sustain an instruction of that kind
it was necessary that there shall be evidence tendered to show,
1st, that the company's agents had knowledge of the plain-
tiff's peril; 2nd, in time to arrest the injury, and 3rd, that they
failed to exert due care after acquiring such knowledge.   In
this case there is an entire absence of such evidence.   There
is no proof that the company's agents saw the plaintiff on the
track, or if that can be presumed from other circumstances,
that they saw him in time to avert the accident.   There is
nothing from which the jury could infer that the engineman,
if he saw the plaintiff before the horse reached the track,
ought to have anticipated that the plaintiff would leave his
place of safety and drive his horse in front of his engine.   And
even if there was, there is no evidence that the engineman
could then have stopped his train or so checked its speed that
the collision would have been averted.   *McNabb's case,* 94
Md. 729; *Neuber's case,* 62 Md. 401.

For these reason's it was error to reject the defendant's
third and fourth prayers.   The judgment will be reversed and
inasmuch as there can be no recovery for the plaintiff on the
facts stated in the record, a new trial will not be awarded.

                                        *Judgment reversed.*