This suit was brought, in the name of the State, for the benefit of the equitable plaintiff, for damages for the killing of his infant daughter by one of the trains of the appellee company at a public crossing of its tracks.
At the close of all the testimony, in the trial of the case below, the Court granted the prayer of the defendant instructing the jury to find a verdict in its favor for want of evidence legally sufficient to entitle the plaintiff to recover. The Court had refused to grant that prayer when offered at the close of the plaintiff's testimony.
The plaintiff offered two prayers both of which were rejected. The first of these prayers predicated the plaintiff's right to recover upon the finding by the jury that his daughter's death had been caused by the negligence of the defendant's servants in charge of the railway crossing; and the second asserted that, even though the plaintiff's daughter had been guilty of contributory negligence, if the jury found that after the railway's servants became aware of her perilous situation they "failed to make proper and reasonable exertions whereby her life could have been saved," he was entitled to recover.
The jury in obedience to the Court's instruction found for the defendant and from the judgment entered on the verdict in its favor the plaintiff took the present appeal. *Page 3 
It was not contended by the counsel for the appellant that the servants of the appellee who were in charge of the train which struck and killed his daughter, were guilty of negligence, or that she had not been guilty of contributory negligence, at the time of the accident. The alleged negligence, upon which the plaintiff sought to recover was that attributed to the gate keeper at the crossing in failing to properly warn the daughter of the approaching train after he saw her put herself in a place of danger.
The only exception appearing in the record was taken to the Court's action upon the prayers offered at the close of the case. As the granting of the defendant's prayer taking the case from the jury necessarily involved the rejection of those of the plaintiff, they need not be separately considered by us, but all of the prayers can be disposed of together as presenting the opposing views of a single contention.
The material facts testified to on behalf of the plaintiff, which for the purposes of this inquiry must be taken to be true, are as follows: On May 5th, 1909, the appellant's daughter Ellen, then a little over twelve years old, and her half sister Mary Humphreys, then sixteen years old, were going together northerly along Main street in the town of Northeast, in Cecil County, with the intention of crossing the railway tracks of the appellee, at their intersection with that street, where there was a public crossing provided with a safety gate on each side of the tracks. When they reached the crossing they found an engine shifting cars across the street on one of the tracks and the safety gates lowered on both sides of the tracks. They stood on the street outside of the gate on the south side of the railroad until the shifting of the cars ceased. At that time the shifting engine was at rest with its front portion on a part of the crossing. Without waiting to be assured of clear tracks by the raising of the safety gate in front of them, the two girls went under or around the end of the lowered gate and attempted to cross the railway. There were four parallel tracks at that point. The *Page 4 
girls crossed in safety the first one, on which the shifting engine and cars stood, and also the one beyond it, but when they reached the third track a freight train came along on it at a rapid rate of speed. Miss Humphreys by quickly jumping back saved herself from injury, but the appellant's daughter was struck and killed by the locomotive of the moving train. Miss Humphreys testified that while she and her companion were still outside of the safety gate, before they started across the railway tracks, they both looked and listened for trains but neither saw nor heard any. She said they looked in both directions and that their view was unobstructed up toward Elkton but they could not see in the other direction — the one from which the train came upon them — because the view was obstructed by the tender of the shifting engine with the cars attached to it and also by some cross-ties piled between the freight house and the crossing. She did not say that they looked or listened again for trains after they had passed the shifting engine, where they could have seen the coming train if they had looked for it. On the contrary when she, having testified that they looked before they started across and that they were standing outside of the gate at that time, was asked if that was the only time they looked, she repeated the statement that they looked before they started across and that they could not see because of the shifter and the ties.
The same witness testified that while she and her companion were attempting to cross the tracks McDowell, the railway servant in charge of the safety gates, stood at the watch box at the gate, on the side of the railroad toward which they were going, with his arms crossed leaning on the lowered gate looking toward them all of the time and that he did not call to them. She further said that she and her companion who was killed were familiar with the locality of the accident and had frequently gone over the tracks at that crossing. *Page 5 
Harry W. Simpers, an eye witness of the accident, gave testimony for the plaintiff tending to corroborate Miss Humphreys' account of the occurrence. He said that he first saw the two girls standing outside of the safety gate and that when the shifter went back they started across walking side by side. He further said that he next "heard somebody holloa or call" and that was what attracted his attention most and that he looked and the girls "stopped on the northbound track and one started back and the other started across. That time the approaching train struck the girl." He said he supposed "that holloaing confused them." He testified further that McDowell the gateman was standing at his post at the safety gate at the time, but he could not tell whether "the holloaing" came from McDowell or not. It came from up the track. The evidence on behalf of the defendant tended to support the plaintiff in that it showed that the "holloaing or calling" heard by the witness Simpers came, not from McDowell, but from other employees of the defendant who were engaged in repairing the platform of the railway station at the crossing.
Upon that state of facts it is insisted on behalf of the appellant that, although his daughter was culpably negligent at the time of the fatal accident, the failure of the gate keeper to give other and further warning to the two girls, when he saw them approaching the track on which the train was coming, than that of keeping down the safety gate in their plain view, brings the case within the operation of what is known as "the last clear chance" rule, and renders the defendant liable for his daughter's death. That claim is made upon the authority of Kehoe's Case,83 Md. 434; Neubeur's Case, 62 Md. 391; Kean's Case, 61 Md. 154;McNab's Case, 94 Md. 719; Tolson's Case, 139 U.S. 551; Ives'Case, 144 U.S. 408, and others.
In those cases it was held that if the servants of a railway company who are in charge of a moving train or car become *Page 6 
aware of the presence of a person on the tracks ahead of them in time to so control the train or car of which they are in charge as to avoid injuring him, it is their duty to do so, even if such person has put himself in a place of peril by negligent or reckless conduct, and that for their failure to use due diligence to avoid injuring him, their principal will be liable. In the case now before us it is conceded that the servants of the defendant who were in charge of the train which struck and killed the plaintiff's daughter were guilty of no negligence at all. That fact differentiates this case in that respect from the cases to which the doctrine of the last clear chance has been applied by this and other Courts.
Here the only negligence with which the defendant is charged is that of which the gate keeper is alleged to have been guilty in failing to call out to or otherwise warn the appellant's daughter of the coming train when he is said to have seen her and her companion actually crossing the tracks. But was he guilty of any negligence in the discharge of his duty toward them? He had warned them of danger as they approached the crossing by lowering the safety gate in their faces. He had continued to warn them of further danger, after the shifting had been suspended or completed, by maintaining the gates in a lowered position in their plain sight. That was the most appropriate warning he could give them. With the gates still lowered the danger signal in full sight, the two girls deliberately disregarded the warning provided by law for their protection and fully displayed by the gate keeper. Even when they had passed the shifting engine and were going toward the track on which the train was approaching he continued to warn them of their danger by keeping the gate lowered in their full view, and, in accordance with the testimony of the survivor of them, showing by leaning on it with folded arms that the time had not arrived when it could with propriety be raised. If they acted upon the mistaken belief that the gates were down solely because of *Page 7 
the shifting of cars, it was their misfortune for which the appellee should not be held liable.
Even when the gate keeper saw the two girls approaching the track on which the train was coming it was not his duty to anticipate that, in spite of the danger signal of the lowered gate plainly visible to them they would attempt to cross in advance of the coming train On the contrary, as we held inNeubeur's Case, 62 Md. 401; Savington's Case, 71 Md. 590;McNab's Case, 94 Md. 729, and McMahon's Case, 97 Md. 487, the gateman "would have been fully justified in supposing that they would not venture to cross until after the passage of the train." If we so held in those cases, in none of which was the person, approaching or upon the railway track, warned of impending danger by a lowered safety gate, how much more strongly does the principle there announced apply to a case like the present one, where the persons approaching the track had open to their view at every step they took a positive warning to halt before they reached it? As the evidence on behalf of the plaintiff shows that his daughter was employed in a shirt factory and was able to earn seventy-five cents a day, if she worked industriously, it must be presumed that she had sufficient intelligence to appreciate the significance of the position and movement of the safety gates at the railway crossing with which she was so familiar.
In view of the facts of this case to which we have referred we do not regard it as falling within the operation of the last clear chance rule, but we are of opinion that the learned Judge below was correct in his rulings upon the prayers, and will therefore affirm the judgment appealed from.
Judgment affirmed with costs. *Page 8